**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| INMET MINING, LLC,[1] | ) | |
| | ) | Case No. 23-70113-grs |
| Debtor. | ) | |
| | ) | Honorable Gregory R. Schaaf |
| BLUEGRASS NATURAL RESOURCES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proceeding No. 25-07001-dll |
| | ) | |
| v. | ) | Honorable Douglas L. Lutz |
| | ) | |
| BLACKJEWEL LIQUIDATION TRUST by and through DAVID J. BECKMAN, TRUSTEE, and THE LIQUIDATING TRUST OF INMET MINING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————— | ) | |
| BLACKJEWEL LIQUIDATION TRUST, LLC by and through DAVID J. BECKMAN, TRUSTEE, | ) | |
| | ) | |
| Counterclaim-Plaintiff. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BLUEGRASS NATURAL RESOURCES, LLC, and THE LIQUIDATING TRUST OF INMET MINING, LLC, | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |

**THE BLACKJEWEL LIQUIDATION TRUST, LLC'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

[1] The Debtor in this chapter 11 case, and the last four digits of the Debtor's taxpayer identification number, are as follows: INMET Mining, LLC (1693).

# TABLE OF CONTENTS

**Page No.**

INTRODUCTION ................................................................................................... 2

FACTUAL & PROCEDURAL BACKGROUND ................................................... 3

    I.   THE BLACKJEWEL DEBTORS' BANKRUPTCY AND AUCTION. ........................... 3

        A.   INMET Acquires Certain Assets Out of the Blackjewel Debtors' Bankruptcy. .... 3

        B.   The INMET APA Specifies the Real Property Being Sold. .................................. 5

        C.   INMET's Conduct Shows It Did Not Acquire the Lee County Real Property....... 7

        D.   Mr. Hobson Is Forced Out of INMET and Steps Are Taken to Seize the
Blackjewel Trust's Property. ................................................................................. 8

    II.  BLUEGRASS MISAPPROPRIATES THOUSANDS OF ACRES OF THE
BLACKJEWEL TRUST'S REAL PROPERTY. ................................................. 9

        A.   Bluegrass Begins Taking Steps to Consummate Its Improper Land Grab. ........... 9

        B.   The Bluegrass Sale Order And Bluegrass APA Recognize Bluegrass Could Only
Purchase What INMET Owned. ........................................................................... 11

        C.   Bluegrass Conveys the Blackjewel Trust's Property Without its Knowledge or
Consent. ................................................................................................................. 12

LEGAL STANDARD.............................................................................................. 14

LAW & ARGUMENT.............................................................................................. 15

    I.   THE BLACKJEWEL TRUST IS ENTITLED TO SUMMARY JUDGMENT ON
BLUEGRASS'S CLAIMS AND THE BLACKJEWEL TRUST'S COUNTERCLAIM
FOR DECLARATORY JUDGMENT. ............................................................... 15

        A.   The Court Should Declare that the Blackjewel Trust Owns the Lee County Real
Property.................................................................................................................. 15

        B.   The Blackjewel Trust is Entitled to Summary Judgment on Bluegrass's Injunctive
Relief and Contempt Claims.................................................................................. 17

    II.  SUMMARY JUDGMENT IS WARRANTED ON THE COUNTERCLAIMS FOR
TRESPASS TO LAND AND SLANDER OF TITLE. .................................... 20

        A.   The Blackjewel Trust is Entitled to Summary Judgment on the Trespass to Land
Counterclaim.......................................................................................................... 20

        B.   Summary Judgment is Warranted on the Slander of Title Claim. ........................ 20

    III. THE BLACKJEWEL TRUST IS ENTITLED TO SUMMARY JUDGMENT ON
BLUEGRASS'S MUTUAL MISTAKE DEFENSE. ........................................ 22

CONCLUSION......................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Am. Bankers Ins. Co.*,
    882 F.2d 856 (4th Cir. 1989) ................................................15

*Atic Enters. Inc. v. Cottingham & Butler Ins. Servs., Inc.*,
    208 F. Supp. 3d 839 (W.D. Ky. 2016) .................................14

*In re: Blackjewel LLC*,
    3:19-bk-30289 (S.D. W.Va.)..................................................3

*Charles Hunter Hobson v. Black Mountain Marketing and Sales, LP, et al.*,
    Case No. 3:23-cv-00374 (E.D. Tenn.) ...................................8

*Commonwealth v. Jones Lang LaSalle Ams., Inc.*,
    2025 WL 3083816 (Va. Ct. App. Nov. 5, 2025) ..................20

*In re Cook*,
    457 F.3d 561 (6th Cir. 2006) ...............................................15

*Cooper v. Bower*,
    2017 WL 4127973 (W.D. Ky. Sept. 18, 2017) .....................14

*Cooper v. Horn*,
    248 Va. 417 (Va. 1994)..........................................................20

*County of Tioga v. Solid Waste Indust. Inc.*,
    178 A.D.2d 873 (N.Y. Ct. App. 1991)..................................22

*Fed. Nat'l Mortg. Assn v. 245 Sullivan Ave LLC*,
    2025 WL 845174 (E.D.N.Y. Mar. 18, 2025).........................22

*In re Fordu*,
    201 F.3d 693 (6th Cir. 1999) ...............................................15

*In re: INMET Mining, LLC*,
    Case No. 23-70113 (Bankr. E.D. Ky.) .......................8, 11, 23

*Johnson v. Martin*,
    2007 WL 2917244 (W.D. Mich. Oct. 5, 2007).....................19

*Karabu v. Pension Benefit Guar. Corp.*,
    1997 WL 759462 (S.D.N.Y. Dec. 10, 1997) .........................16

*Ky. Oil & Gas, Inc. v. Rodgers*,
2019 WL 4918755 (W.D. Ky. Oct. 4, 2019) ..........................................................................14

*Kyocga Co., LLC v. Sapphire Coal Co.*,
2009 WL 3055343 (E.D. Ky. Sept. 21, 2009) ......................................................................16

*Meehancombs Glob. Credit Opportunities Master Fund, LP v. Ceasars Ent.
Corp.*,
162 F. Supp. 3d 200 (N.D.N.Y. 2015) ..................................................................................17

*Matter of MTG, Inc.*,
644 B.R. 702 (Bankr. E.D. Mich. 2022) ...............................................................................19

*Muller v. ALG Trustee, LLC*,
2024 WL 3939103 (W.D. Va. Aug. 26, 2024) ......................................................................21

*N.Y. First Ave. CVS, Inc. v. Wellington Tower Assoc., L.P.*,
299 A.D. 2d 205 (N.Y. Ct. App. 2002)............................................................................22, 23

*Nationstar Mortg., LLC v. Goodman*,
187 A.D.3d 1635 (N.Y. Ct. App. 2020).................................................................................15

*In re Quinn*,
4 F.3d 986, 1993 WL 321583 (4th Cir. 1993) ......................................................................21

*Rockland Farm, LLC v. White's Ferry, Inc.*,
106 Va. Cir. 309, 2020 WL 10458185 (Cir. Ct. Nov. 23, 2020) ..........................................20

*Rosen's Café, LLC v. 51st Madison Gourmet Corp.*,
117 A.D.3d 512 (N.Y. App. 2014) ........................................................................................16

*Shea v. Royal Enters., Inc.*,
2011 WL 43460 (S.D.N.Y. Jan. 6, 2011) ..............................................................................22

*Sierra Club v. Callaway*,
499 F.2d 982 (5th Cir. 1974) .................................................................................................18

*Sue Ann Clarke as Trustee of Sue Ann Clarke 2012 Spousal GST Trust v. Western
Mason Water District*,
2023 WL 2992995 (E.D. Ky. Apr. 18, 2023) ..................................................................15, 18

*Tamir v. Bank of N.Y. Mellon*,
2013 WL 4522926 (E.D.N.Y. Aug. 27, 2013)......................................................................22

*Walker v. Leikin, Ingber & Winters, P.C.*,
2018 WL 9944941 (W.D. Mich. Nov. 13, 2018)...................................................................19

**Other Authorities**

Fed. R. Civ. P 56....................................................................................................................................14

## **INTRODUCTION**

Courts have long recognized that "you cannot sell what you do not own," meaning that one cannot transfer more ownership rights to a buyer than they possess themselves.  That principle should be the beginning and the end of the Court's analysis in this case.  Simply put, Bluegrass Natural Resources, LLC ("Bluegrass") asserts ownership rights over certain real property (the "Retained Property") that it claims to have purchased from INMET Mining, LLC ("INMET").  However, INMET did not own the Retained Property because it never acquired it from the Blackjewel Debtors during the 2019 Blackjewel bankruptcy.  As a result, INMET could not have transferred the Retained Property, including the real property located in Lee County, Virginia (the "Lee County Real Property"), to Bluegrass as a matter of law.

In September of 2019, the West Virginia Bankruptcy Court entered the INMET Sale Order, pursuant to which INMET acquired certain real property and other assets from the Blackjewel Debtors.  Notably, the INMET APA was clear that INMET was only acquiring real property associated with certain "Transferred Permits" and that, "*[f]or avoidance of doubt, any real property . . . situated in locations other than Harlan County, Kentucky, or Wise County, Virginia, are specifically excluded from the Owned Real Property* . . . ."  Ex. 1 (INMET APA) at Exhibit B (emphasis added).

Notwithstanding this clear contractual exclusion of all real property located in counties other than Harlan and Wise, Bluegrass—a non-party to the INMET APA—seeks to use this litigation to legitimize its efforts to deprive The Blackjewel Liquidation Trust LLC (the "Blackjewel Trust") of thousands of acres of real property that was never sold to INMET.  Because INMET never acquired ownership to any of the Retained Property in the Blackjewel bankruptcy, each of Bluegrass's claims against the Blackjewel Trust fail.  In addition, the Court should grant summary judgment on Bluegrass's affirmative defense that the INMET APA must be reformed

due to a purported "mutual mistake."  As a non-party, Bluegrass lacks standing to seek reformation

of the INMET APA.  Moreover, the mutual mistake defense fails because neither party to the

INMET APA, INMET nor the Blackjewel Debtors/Trust, have alleged that there was any mistake

with respect to the INMET APA—much less a mutual one.  This Court should not legitimize

Bluegrass's improper and unjust land grab at the expense of the Blackjewel Trust's creditors.

Accordingly, the Blackjewel Trust respectfully requests that the Court enforce the INMET APA

as written, grant the Blackjewel Trust summary judgment on all of Bluegrass's claims, and grant

the Blackjewel Trust summary judgment on the counterclaims that are the subject of this Motion.[1]

## **FACTUAL & PROCEDURAL BACKGROUND**

## **I.     THE BLACKJEWEL DEBTORS' BANKRUPTCY AND AUCTION.**

### **A.     INMET Acquires Certain Assets Out of the Blackjewel Debtors' Bankruptcy.**

On July 1, 2019, the Blackjewel Debtors filed for Chapter 11 bankruptcy in the United

States Bankruptcy Court for the Southern District of West Virginia.  *See In re: Blackjewel LLC*,

3:19-bk-30289 (S.D. W.Va.) (the "Blackjewel Bankruptcy") at ECF No. 1.  In late July and early

August of 2019, the Blackjewel Debtors held a bankruptcy auction to sell certain of their assets to

maximize value for their estates.  *See* Deposition of D. Beckman (Ex. 2) ("Beckman Dep.") at

75:7-92:21. Ultimately, INMET was declared the winning bidder for certain assets associated with

the Black Mountain and Lone Mountain ("BM/LM") mining operations.  *Id.* at 90:20-91:24.

INMET never claimed to be bidding on or purchasing the entirety of the BM/LM assets

but was focused on carving out just the limited operations and assets it deemed necessary.

Deposition of J. Freund (Ex. 3) ("Freund Dep.") at 26:2-27:21.  This specificity was critical to the

---

[1] For purposes of this Motion, the Blackjewel Trust is only seeking summary judgment on (i) Bluegrass's claims for declaratory judgment, injunctive relief, and contempt sanctions, (ii) the Blackjewel Trust's counterclaims for declaratory judgment, trespass to land, and slander of title with respect to the Lee County Real Property, and (iii) Bluegrass's mutual mistake defense.  The Blackjewel Trust expressly reserves the right to pursue its other counterclaims and the vindication of its rights with respect to the other Retained Property at trial.

auction process because there were multiple bidders for the BM/LM assets right to the end of the auction. Beckman Dep. at 83:22-92:6.

After the auction concluded, INMET and the Blackjewel Debtors began documenting the final agreement. *See* Deposition of H. Hobson (Ex. 4) ("Hobson Dep.") at 72:16-74:5; Beckman Dep. at 94:18-24. Between August and September of 2019, the parties and their counsel negotiated a final Assignment and Assumption Agreement and Bill of Sale Regarding Specific Assets (the "INMET APA"), specifically detailing which assets INMET purchased from Blackjewel. During this roughly 5-week documentation process, the parties exchanged multiple drafts. Hobson Dep. at 73:12-74:5.

While numerous changes were made during the negotiation process, several key components of the INMET APA remained consistent. *First*, the Blackjewel Debtors were only selling "***certain assets*** related to the mining[,] [p]rocessing, preparation, selling and shipping of coal and related operations conducted with respect to the Black Mountain and Lone Mountain mining operations" as reflected in the winning bid. *See* Ex. 5 (August 11, 2019 draft) at MMA 000068 (emphasis added); Ex. 6 (August 27, 2019 draft) at BJLT_0000219; Ex. 7 (August 29, 2019 draft) at BJLT_0000064; Ex. 1 (executed INMET APA) at 41 of 162. The parties never intended for INMET to buy all the BM/LM operations or assets. Freund Dep. at 26:2-27:21.

*Second*, Exhibit B to the INMET APA **never contemplated the sale of __any__ Lee County, Virginia real property**. Ex. 5 at MMA00078; Ex. 6 at BJLT_000230; Ex. 7 at BJLT_000074; Ex. 1 at 52 of 162. This remained true through the execution of the INMET APA because the Blackjewel Debtors "***intended not to sell [INMET] any real property in Lee County, Virgina…***" *See* Beckman Dep. at 57:1-9 (emphasis added).

*Third*, because the sale process was fast-moving and there were recognized issues with the Blackjewel Debtors' records, the parties specifically agreed to allow INMET twelve months post-closing to identify and request the transfer of additional assets "necessary for the operation of the Purchased Business." Ex. 1 at 44 of 162. This twelve-month window remained unchanged throughout the negotiations. *See* Ex. 5 at MMA000070-71; *see also* Ex. 6 at BJLT_00000222; Ex. 7 at BJLT_00000067; Ex. 1 at Page 44 of 162.

### B.    The INMET APA Specifies the Real Property Being Sold.

The INMET APA was entered by the West Virginia Bankruptcy Court on September 17, 2019, and was attached to the INMET Sale Order.[2] *See generally* Ex. 1. Recital A of the INMET APA provides, in pertinent part:

> [INMET] has been approved to acquire from [the Blackjewel Debtors] ***certain assets*** related to the mining[,] [p]rocessing, preparation, selling and shipping of coal and related operations conducted with respect to the Black Mountain and Lone Mountain mining operations situated in Harlan[] County, Kentucky, Letcher County, Kentucky, and Wise County, Virginia (the "**Purchased Business**"), which assets are more particularly described herein (collectively, the "**Purchased Assets**").

Ex. 1 at 41 of 162 (emphasis added). Paragraph 1(ii) of the INMET APA provides that INMET purchased certain real property, defined as "Owned Real Property," from the Blackjewel Debtors. *Id.* at 41-42 of 162.[3]

Because of the tumultuous nature of the sale process, the parties did not create a new schedule identifying the real property being sold. Instead, INMET included certain existing schedules of real property from prior transactions in which the Blackjewel Debtors had originally

---

[2] *See Order (I) Approving the Sale of Certain Assets to Kopper Glo Mining, LLC Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 1096] (the "INMET Sale Order").

[3] Owned Real Property was defined as "[t]he real property interests owned by [the Debtors] Sellers associated with the Transferred Permits and described on Exhibit B attached hereto and made a part hereof and incorporated herein by reference." *Id.* at 42 of 162.

purchased the entirety of the BM/LM assets.  Ex. 7 at BJLT_000052; Beckman Dep. at 159:12-

160:24.  These proposed schedules included assets that were specifically excluded from the

contemplated transaction, including the Lee County Real Property.  Ex. 7 at BJLT_000052;

Beckman Dep. at 159:12-160:24. However, Exhibit B to the INMET APA narrowed the

applicability of the attached schedules and expressly excluded any real property *not* located in

Harlan County, Kentucky or Wise County, Virginia:

> The Purchased Assets include all Owned Real Property associated
> with the Transferred Permits including, without limitation, the real
> property interests identified in this <u>Exhibit B</u> or any attachment
> hereto, to the extent such real property interests are associated with
> the Transferred Permits. ***For avoidance of doubt, any real property
> listed below and situated in locations other than Harlan County,
> Kentucky, or Wise County, Virginia, are specifically excluded
> from the Owned Real Property . . . .***

Ex. 1 at 52 of 162 (emphasis added).

Said another way, INMET only purchased real property interests in Harlan County,

Kentucky and Wise County, Virginia—thereby specifically excluding any Lee County Real

Property.  *Id.*  Notably, other schedules to the INMET APA, including those related to transferred

permits[4] and equipment stated that INMET purchased certain permits and equipment in Lee

County, Virginia, Harlan County, Kentucky, and Wise County, Virginia.  *See, e.g., id.* at 60 of

162.  Obviously, the parties specifically included the Lee County assets that INMET was buying

and excluded the real property interests in Lee County, Virginia, in the INMET APA.  *Compare

id.* at 52 of 162 *with id*. at 60 of 162.

Because the parties recognized that they were working from less than ideal information

and did not have time pre-closing to complete the desired amount of diligence, they agreed that

---

[4] For example, Exhibit A of the INMET APA contains a list of the Transferred Permits, two of which are located in
Lee County, Virginia: (a) the Wallins Mine (permit #1202027) and (b) the LMP Prep Plant (permit #1301411).  *See*
Ex. 1.

INMET could come back to the Blackjewel Debtors within twelve months from the effective date of the INMET APA if INMET discovered that the INMET APA did not include all of the assets necessary to operate the Purchased Business:

> Accordingly, in the event that, ***within twelve (12) months following the Effective Date***, it is discovered that certain assets, properties or rights . . . other than the Excluded Assets, were not included in the Purchased Assets to be sold to [INMET], and such assets, properties or rights are needed by [INMET], in its reasonable discretion, in the operation of the Purchased Business . . . . then [the Blackjewel Debtors] shall use their commercially reasonable efforts to assign, convey, lease or sublease, as applicable, such assets, properties, or rights to [INMET], in each case upon the reasonable request of [INMET] at no additional cost or expense to [INMET].

Ex. 1 at 44 of 162 (emphasis added).

Significantly, the INMET APA represented "the entire understanding and agreement between the parties…" *Id*. Thus, the INMET APA unequivocally provides that the Lee County Real Property was excluded from the real property sold to INMET.

### C.    INMET's Conduct Shows It Did Not Acquire the Lee County Real Property.

As discussed above, INMET did not purchase any Lee County Real Property pursuant to the INMET APA. *See* Ex. 1 at 52 of 162. However, INMET did purchase the permits and equipment associated with the Lone Mountain Prep Plant, which is located in Lee County, Virginia. *Id*. at 50 of 162.[5] Consistent with not acquiring the Lee County Real Property, INMET only took title to and paid taxes on the Lone Mountain prep plant. Deposition of J. Strobel (Ex. 8) ("Strobel Dep.") at 152:19-153:6; *see also id*. at 175:6-18. INMET did ***not*** take title to, or pay taxes on, any of the Lee County Real Property. *Id*.; *see also id*. at 152:19-153:6. In addition, although INMET had the contractual right to seek to modify the assets purchased within twelve

---

[5] INMET's former CEO, Mr. Hobson, testified that there were numerous reasons why a buyer of a prep plant would not need to acquire the Lee County Real Property or want to acquire the specific real property on which it sits. Hobson Dep. at 68:13-69:6.

months of closing, it did not take any steps to do so and did not identify any additional assets within this time frame, including any real property interests in Lee County, Virginia.  Beckman Dep. at 185:14-186:14.  The twelve-month window to request the transfer of additional real property closed on or about September 7, 2020.  Ex. 1 at 44 of 162.

**D.    Mr. Hobson Is Forced Out of INMET and Steps Are Taken to Seize the Blackjewel Trust's Property.**

During INMET's operation, Black Mountain Marketing and Sales, LP ("BMMS"), which is wholly owned and controlled by Javelin Global Commodities (US), LP ("Javelin")—which now owns and controls Bluegrass—was INMET's sole off-taker of coal, primary lender, and largest secured creditor.  Deposition of S. Sloan (Ex. 9) ("Sloan Dep.") at 20:12-25; INMET Bankruptcy at ECF No. 22 at ¶¶ 6-12.[6]  At the time of INMET's bankruptcy, BMMS claimed that INMET owed it more than $100 million.  INMET Bankruptcy at ECF No. 22 at ¶¶ 6-12.  Mr. Hobson, INMET's former CEO, testified that this "build up of [] debt… was a way for BMMS and Javelin to take [INMET] from" him.  Deposition of H. Hobson from Jan. 21, 2025 (Ex. 10) ("Jan. 21, 2025 Hobson Dep.") at 156:3-9.  In addition, Mr. Hobson expressed doubts about the legitimacy of the amount of the debt being claimed.  Deposition of H. Hobson from Nov. 22, 2024 (Ex. 11) ("Nov. 22, 2024 Hobson Dep.") at 110:21-113:3.

In January of 2023, Defendants accused Hobson of embezzling INMET funds, which he vehemently denied.[7]  Hobson Dep. at 70:14-71:4.  On March 26, 2023, Javelin and BMMS

---

[6] Citations to "INMET Bankruptcy at ECF No. __" refer to documents filed in the case captioned *In re: INMET Mining, LLC*, Case No. 23-70113 (Bankr. E.D. Ky.).

[7] Ironically, *after* accusing Mr. Hobson of embezzlement, Defendants entered into a consulting agreement with him pursuant to which he would be paid $500,000 for at least two years.  Ex. 12 at 1.  Unsurprisingly, Defendants did not honor this agreement, and Mr. Hobson initiated an action for breach of contract, which is currently pending as *Charles Hunter Hobson v. Black Mountain Mktg. & Sales, LP, et al.*, Case No. 3:23-cv-00374 (E.D. Tenn.).

removed Hobson from INMET and appointed another Javelin employee, Mr. Jerrod Freund,[8] "as

the sole manager and officer of IMG and member of IMG's Board."    Ex. 13 at

DEFENDANT83119-20.  On April 5, 2023, shortly after taking control of INMET, BMMS and

Javelin forced INMET to file for bankruptcy with a petition that provided that the lion's share of

INMET's assets be transferred to Bluegrass—an entity created by Javelin—through an expedited

sales order.  *See* INMET Bankruptcy at ECF No. 1; Sloan Dep. at 20:12-25.  Importantly, INMET's

bankruptcy petition identifies Jeff Strobel—the individual BMMS and Javelin brought in well

before the filing to act as INMET's CFO—as INMET's Chief Restructuring Officer.  INMET

Bankruptcy at ECF No. 1.  And, of course, after Javelin formed Bluegrass to acquire INMET's

assets out of bankruptcy, Mr. Strobel was named Bluegrass's Chief Financial Officer.  Strobel

Dep. at 59:2-17.

The bankruptcy filings represented that BMMS and Javelin were INMET's largest secured

creditors, purportedly holding **over $100 million** in secured debt.  INMET Bankruptcy at ECF No.

22 at ¶¶ 8-9.  The Blackjewel Trust was identified as the largest unsecured creditor.  *Id.* at ECF

No. 1.  Although certain interested buyers contacted Javelin and BMMS about INMET's assets,

they were told to "***not waste [their] time***" because Javelin was "credit bidding."  Ex. 14 at

DEFENDANT95338-39 (emphasis added).

## II. BLUEGRASS MISAPPROPRIATES THOUSANDS OF ACRES OF THE BLACKJEWEL TRUST'S REAL PROPERTY.

### A. Bluegrass Begins Taking Steps to Consummate Its Improper Land Grab.

On April 27, 2023, INMET filed a motion in the INMET Bankruptcy requesting, among

other things, approval of bidding procedures, an expedited auction process, and one or more sales

---

[8] At the time, Mr. Freund was employed by Javelin. Freund Dep. at 62:12-15.  However, in connection with his prior work for Jefferies, Mr. Freund served as the Blackjewel Debtors' financial advisor, including in connection with the 2019 auction of the assets ultimately purchased by INMET.  *Id.* at 21:15-27:21.

of its assets.  INMET Bankruptcy at ECF No. 161.  On May 10, 2023, this Court set forth the dates

for interested parties to bid on INMET's assets, approved administration of an auction, and

scheduled a hearing to approve the proposed sales.  *Id.* at ECF No. 248.  On June 9, 2023, BMMS

filed an APA in accordance with this Court's sale process (the "Initial BMMS APA").  *Id*. at ECF

No. 358.   The Initial BMMS APA **did not include the sale of any Lee County Real Property**

to BMMS.  *See generally* ECF No. 358-1.  Based on this Initial BMMS APA, the auction was

cancelled and BMMS was declared the winning bidder.

On July 2, 2023, INMET filed a draft Bluegrass Sale Order, which also **did not identify**

**any Lee County Real Property to be sold**.  *Id*. at ECF No. 470.  On July 2, 2023, INMET filed

a revised, executed version of the Initial BMMS APA (the "Second BMMS APA").  *Id.* at ECF

Nos. 472 and 472-1.  Schedule 2.1(d)(i) of the Second BMMS APA included the list of "Owned

Real Property" being sold to BMMS.  Schedule 2.1(d)(i) of the Second BMMS APA **also did not**

**include the Lee County Real Property**.  *Id.* at ECF No. 472-1 at 144-150 of 215.  On July 5,

2023, INMET filed amended schedules to the Second BMMS APA (the "Amended Schedules").

*Id*. at ECF Nos. 487, 487-1, and 487-2.  The Amended Schedules added the Lee County Real

Property to Schedule 2.1(d)(i) for the first time by including the real property reflected in Exhibit

B to the INMET APA—without including the limiting language in the Preamble to Exhibit B.  *Id.*

at ECF No. 487-1 at 2-12 of 36.

On July 11, 2023, INMET filed a further revised version of the Second BMMS APA with

the Amended Schedules (the "Initial Bluegrass APA").  INMET Bankruptcy at ECF Nos. 513,

513-1, and 513-2.  Schedule 2.1(d)(i) of the Initial Bluegrass APA included the Lee County Real

Property.  *Id.* at ECF No. 513-1 at 122-132 of 206.  On July 12, 2023, this Court held a hearing to

consider the Initial Bluegrass APA.  *Id*. at ECF No. 523.  On July 13, 2023, this Court entered the

Bluegrass Sale Order authorizing the sale of certain property to BMMS's affiliate, Bluegrass, and to execute the Initial Bluegrass APA. *Id*. at ECF No. 536. The Initial Bluegrass APA was not attached to the Bluegrass Sale Order. *See generally id*. On July 28, 2023, Bluegrass acquired certain property from INMET pursuant to the Bluegrass Sale Order and the Bluegrass APA. On August 10, 2023, INMET filed the finalized and executed Bluegrass APA. *Id*. at ECF No. 617. It is undisputed that the Blackjewel Trust is not a party to the Bluegrass APA.

> **B.      The Bluegrass Sale Order and Bluegrass APA Recognize Bluegrass Could Only Purchase What INMET Owned.**

Both the Bluegrass Sale Order and Bluegrass APA recognize that Bluegrass could only purchase what INMET owned. The Bluegrass Sale Order states that Bluegrass made "the highest and best offer for ***[INMET's] properties and assets*** being sold pursuant to the Stalking Horse Agreement," which the Bluegrass Sale Order defines as the "Purchased Assets." *Id*. at ECF No. 536 at 2-3 of 44 (emphasis added). In turn, the Bluegrass APA provides, in part, that INMET was selling, and Bluegrass was purchasing, INMET's "***right, title and interest in, to or under***" specific assets set forth therein. *Id*. at ECF No. 617-1 at 20-21 of 218 (emphasis added).

With respect to INMET's real property assets being sold to Bluegrass, the Bluegrass APA defines INMET's "Owned Real Property" as "all real property ***owned by [INMET]***, and all right, title and interest of [INMET] therein…" *Id*. at 13 of 218. And Schedule 2.1(d)(i) of the Bluegrass APA—which is entitled "Acquired Assets – Owned Real Property"—specifically identifies the Blackjewel Debtors' 2019 West Virginia Bankruptcy as the source of INMET's real property assets. *Id*. at 134 of 218.[9] Thus, under the Bluegrass APA's plain language, INMET could only sell what it acquired from the Blackjewel Debtors in 2019.

---

[9] Although the real property schedules from the INMET APA were used as the source for the real property schedules in the Bluegrass APA, the restrictive language in the Preamble to Exhibit B in the INMET APA was not referenced.

After entry of the INMET Sale Order and the Bluegrass APA, INMET and then Bluegrass began entering onto and utilizing the Lee County Real Property.  Strobel Dep. at 153:24-154:6. By operating on the Lee County Real Property, Bluegrass created reclamation obligations and other liabilities.  Deposition of F. Taglia (Ex. 15) ("Taglia Dep.") at 160:6-161:23.  Indeed, since August of 2023, Bluegrass has shipped hundreds of thousands of tons of coal from and across the Lee County Real Property.  *See* Ex. 16.

**C.**    **Bluegrass Conveys the Blackjewel Trust's Property Without Its Knowledge or Consent.**

The Blackjewel Trust owns thousands of acres of real property, including the Lee County Real Property, and other Retained Property in Harlan County, Kentucky and Wise County, Virginia not associated with mining operations that INMET purchased from the Blackjewel Debtors.  *See* Ex. 17 at BJLT_00006720-29.  In Lee County alone, the Blackjewel Trust owns more than 3,000 acres—much of which are far removed from the Lone Mountain Prep Plant. *Id.*; *see also* Ex. 18 (Supplemental Ans. to Discovery Requests) at Ans. Nos. 2 and 8.

In 2023, the Blackjewel Trust began exploring the process for selling its real estate holdings to generate value for the benefit of creditors.  Beckman Dep. at 147:23-156:6.  As a result, it engaged Michael Costello, an independent contractor, to assist with analyzing its property holdings.  *Id.*  Through Mr. Costello's efforts, the Blackjewel Trust learned that Bluegrass was asserting ownership interests over much of the Blackjewel Trust's property, including in Lee County.

With respect to the Lee County Real Property, on or about January 31, 2024, Bluegrass purported to execute and record a Deed of Conveyance dated January 10, 2024 from Lone Mountain Processing, LLC—a Blackjewel Debtor—to INMET.  Ex. 19 at 1-10.  The deed was signed by Mr. Taglia—Bluegrass's President—purporting to act **on behalf of the Blackjewel**

**Debtors/Trust**.  *Id.* at 5.  Mr. Taglia, acting without the knowledge or authorization of the Blackjewel Trust, purported to convey 57 parcels of Lee County, Virginia property, valued at $5,475,900 from Lone Mountain Processing, LLC to INMET.  *Id.* at 1, 5.  Bluegrass never contacted Mr. Beckman or anyone else associated with the Blackjewel Trust about this Deed of Conveyance and executed it without the Blackjewel Trust's knowledge or authorization.  Strobel Dep. 164:5-165:20.  Bluegrass's own witnesses acknowledge that signing these deeds on the Blackjewel Debtors' behalf without their knowledge or authorization would be inappropriate. Freund Dep. at 104:11-21.  Then, on or about March 7, 2024, Bluegrass filed a second deed of conveyance purporting to convey the same 57 parcels of Lee County, Virginia property from INMET to itself.  *See* Ex. 20.

On April 4, 2024, after this subterfuge was discovered, counsel to the Blackjewel Trust sent a letter to counsel for Bluegrass and the INMET Trust requesting confirmation from Bluegrass (and INMET) that the Lee County Real Property was not sold or transferred to INMET and therefore could not have been transferred to Bluegrass.  *See* Ex. 21.  The Blackjewel Trust's counsel indicated that if the parties could not resolve this issue, it would be forced to pursue litigation.  *Id.*  Rather than having a discussion or pursuing a settlement of any related disagreement, Bluegrass sent a letter dismissing the Blackjewel Trust's position and initiated litigation against the Blackjewel Trust roughly 45 minutes later.  *See* Ex. 22.

Ultimately, following months of litigation in this Court and the West Virginia Bankruptcy Court regarding the appropriate forum for resolving the parties' dispute, the pending Complaint was filed on January 15, 2025.  ECF No. 1.  In the Complaint, Bluegrass asserts claims for (1) a declaration that it owns the Lee County Real Property, (2) injunctive relief against the Blackjewel Trust, and (3) contempt sanctions against the Blackjewel Trust.  On February 21, 2025, the

- 13 -

Blackjewel Trust filed an Answer and asserted counterclaims for (1) declaratory judgment that it owns the Retained Property, (2) unjust enrichment, (3) trespass to land, (4) slander of title (5) permanent injunctive relief, and (6) contempt sanctions.  *See* ECF No. 16 at ¶¶ 90-132.  The INMET Trust has answered but has not asserted any counterclaims or cross-claims.  *See generally* ECF Nos. 17 and 27.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought," and the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a).  A genuine dispute of material fact exists only "where there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Cooper v. Bower*, 2017 WL 4127973, at *1 (W.D. Ky. Sept. 18, 2017) (quotations omitted).  Although "the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some metaphysical doubt as to the material facts."  *Ky. Oil & Gas, Inc. v. Rodgers*, 2019 WL 4918755, at *2 (W.D. Ky. Oct. 4, 2019) (quotations omitted).  Indeed, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; instead, the non-moving party must present evidence upon which the jury could reasonably find for it."  *Atic Enters. Inc. v. Cottingham & Butler Ins. Servs., Inc.*, 208 F. Supp. 3d 839, 842 (W.D. Ky. 2016).  Applying that standard here, the Blackjewel Trust is entitled to summary judgment on (i) all of Bluegrass's claims, (ii) its counterclaims for declaratory judgment, trespass to land, and slander of title, to the extent they concern the Lee County Real Property, and (iii) Bluegrass's defense of mutual mistake.

## LAW & ARGUMENT

**I.     THE BLACKJEWEL TRUST IS ENTITLED TO SUMMARY JUDGMENT ON BLUEGRASS'S CLAIMS AND THE BLACKJEWEL TRUST'S COUNTERCLAIM FOR DECLARATORY JUDGMENT.**

Bluegrass's Complaint is based on the incorrect premise that Bluegrass acquired the Lee County Real Property from INMET. *See generally* ECF No. 1. As a result, all of Bluegrass's claims rise and fall on whether the Lee County Real Property was sold by the Blackjewel Debtors to INMET in 2019. Otherwise, none of the Lee County Real Property could have been transferred from INMET to Bluegrass in 2023. Because the plain and unambiguous language of the INMET APA provides that the Blackjewel Debtors did not sell any real property located in counties other than Harlan County, Kentucky and Wise County, Virginia to INMET, Bluegrass's claims fail and the Blackjewel Trust is entitled to summary judgment on all of Bluegrass's claims and the counterclaim for declaratory judgment.

**A.     The Court Should Declare that the Blackjewel Trust Owns the Lee County Real Property.**

Both the Blackjewel Trust and Bluegrass seek declarations from this Court concerning the ownership of the Lee County Real Property. *See* ECF No. 1 at ¶¶ 55-62; *see also* ECF No. 16 at ¶¶ 90-95. It is axiomatic under property law that "[a] grantor cannot convey what the grantor does not own[.]" *Nationstar Mortg., LLC v. Goodman*, 187 A.D.3d 1635, 1637 (N.Y. Ct. App. 2020).[10] As a result, this Court must determine whether the Blackjewel Debtors conveyed the Lee County

---

[10] "Although the issue of what property is properly included in the debtor's bankruptcy estate raises a federal question, it is well-settled that a debtor's property rights are created and defined by state law." *In re Fordu*, 201 F.3d 693, 700 (6th Cir. 1999). Bluegrass has taken the position that "New York law applies" here due to the INMET APA's choice-of-law provision. *See* ECF No. 46 at ¶ 7. However, the common-sense principle that one can only sell what one owns exists across jurisdictions. *See, e.g., Sue Ann Clarke as Trustee of Sue Ann Clarke 2012 Spousal GST Trust v. Western Mason Water Dist.*, 2023 WL 2992995, at *4 (E.D. Ky. Apr. 18, 2023) ("one cannot convey an interest greater than what he enjoys") (applying Kentucky law); *Allstate Ins. Co. v. Am. Bankers Ins. Co.*, 882 F.2d 856, 859 (4th Cir. 1989) ("It is axiomatic that one may not sell, assign or hypothecate that which he does not own") (applying Virigina law); *In re Cook*, 457 F.3d 561, 566 (6th Cir. 2006) ("the trustee of a bankruptcy estate can have no greater right to the property in question than that held by the debtor prior to bankruptcy.").

Real Property to INMET via the INMET APA. If they did not, INMET could not have conveyed the property to Bluegrass. This Court's decision in this regard should be guided by the plain language of the INMET APA.

Exhibit B to the INMET APA makes clear that the Blackjewel Debtors did *not* convey the Lee County Real Property to INMET. This is because it states: "For avoidance of doubt, ***any real property listed below and situated in locations other than Harlan County, Kentucky, or Wise County, Virginia, are*** <u>***specifically excluded***</u> ***from the Owned Real Property***…" Ex. 1 at 52 of 162 (emphasis added). It is undisputed that Lee County, Virginia—where the Blackjewel Trust owns more than 3,000 acres—is not in Harlan County, Kentucky or Wise County, Virginia. As a result, that real property was "specifically excluded" and not transferred to INMET. *Id.*

Under governing law, this Court should enforce the INMET APA as written and not recognize Bluegrass's improper land grab. Indeed, "the terms of a contract, if clear and unambiguous, must be given their plain and ordinary meaning." *Kyocga Co., LLC v. Sapphire Coal Co.*, 2009 WL 3055343, at *4 (E.D. Ky. Sept. 21, 2009); *see also Rosen's Café, LLC v. 51st Madison Gourmet Corp.*, 117 A.D.3d 512, 512 (N.Y. App. 2014) ("Where the parties set down the terms of their agreement…into a clear and unambiguous writing, the agreement should be enforced according to its plain meaning."). This Court should not rewrite the INMET APA to provide Bluegrass with a better bargain than was entered into by the parties (INMET and the Blackjewel Debtors). *See, e.g., Karabu v. Pension Benefit Guar. Corp*., 1997 WL 759462, at *14 (S.D.N.Y. Dec. 10, 1997) ("the Court cannot and should not rewrite [a] contract—no matter how poorly drafted—to include language or rights that a party itself was unable to insert."). And, of course, Bluegrass's claim that it is entitled to the Lee County Real Property would impermissibly render the Preamble to the INMET APA—which was specifically drafted for the 2019

transaction—mere surplusage, making it meaningless.  *See, e.g., Meehancombs Glob. Credit Opportunities Master Fund, LP v. Ceasars Ent. Corp*., 162 F. Supp. 3d 200, 210 (N.D.N.Y. 2015) ("Under New York law, a contract should be read to give effect to all of its provisions, and courts should avoid interpretations that render contract terms meaningless or superfluous.").

Because the plain language of the preamble to Exhibit B to the INMET APA *specifically excluded* all real property located in counties other than Harlan and Wise, INMET did not acquire any Lee County Real Property in 2019.  And because INMET did not acquire any Lee County Real Property in 2019, it could not have conveyed such property to Bluegrass in a subsequent sale. Thus, the Blackjewel Trust is entitled to a declaration that it owns all the Lee County Real Property.

**B.    The Blackjewel Trust Is Entitled to Summary Judgment on Bluegrass's Injunctive Relief and Contempt Claims.**

Bluegrass contends that the Bluegrass Sale Order enjoins the Trust from "asserting any continuing interest in or ownership of the Lee County [Real Property] and taking any further steps to market or sell the Lee County [Real Property]," and it asks this Court to enforce that injunction provision against the Blackjewel Trust.  ECF No. 1 at ¶¶ 63-66.  Bluegrass also asks this Court to issue contempt sanctions against the Trust for alleged violations of the Bluegrass Sale Order's injunctive provision.  *Id*. at ¶¶ 67-69.  Because Bluegrass's requests are based on the demonstrably false premise that the Lee County Real Property falls within the "Purchased Assets," as defined by the Bluegrass Sale Order, they should be rejected out of hand.  *Id*. at ¶¶ 63-69.

In addition, it is worth noting that the Bluegrass Sale Order's injunction provision applies only to the "Purchased Assets," as defined therein:

> Except for Permitted Encumbrances and Assumed Liabilities or as specifically provided in the Stalking Horse Agreement or this Order, all persons and entities asserting or holding any Liens, Claims, and Interests in or with respect to the ***Purchased Assets***… s***hall be forever barred, estopped, and permanently enjoined from***

> *asserting, prosecuting, or otherwise pursuing such Liens, Claims,*
> *or Interests against the Buyer or the Purchased Assets*.

INMET ECF No. 536 at Page 14 of 44 (emphasis added).  Significantly, the Bluegrass Sale Order recognizes the common-sense limitation that Bluegrass could only purchase what INMET owned. The Bluegrass Sale Order states that Bluegrass made "the highest and best offer *for [INMET's] properties and assets* being sold pursuant to the Stalking Horse Agreement," which the Bluegrass Sale Order defines as the "Purchased Assets."  INMET ECF No. 536 at 2-3 of 44.  In turn, the Amended and Restated Stalking Horse Agreement provide that Bluegrass was purchasing, "***all of [INMET's] right, title and interest in***" certain assets, and defined "Owned Real Property" as "all real property owned by [INMET], and all right, title and interest of [INMET] therein[.]"  INMET ECF No. 617-1 at 13 of 218.  If INMET did not have any rights in certain real property, there was nothing to sell to Bluegrass.

When describing the real property that Bluegrass purchased from INMET, Schedule 2.1(d)(i) to the Amended and Restated Stalking Horse Agreement specifically identified the Blackjewel Bankruptcy Action as the source of this property—while failing to reference the Preamble specially excluding any real property, including the Lee County Real Property, located in counties other than Harlan County, Kentucky and Wise County, Virginia.  *Id*. at Page 134 of 218.  As such, any real property that INMET could have sold to Bluegrass necessarily came from the Blackjewel Debtors and excludes the Retained Property.

Because the Blackjewel Debtors *never sold* the Lee County Real Property to INMET, it cannot fall within the scope of the Bluegrass Sale Order's definition of "Purchased Assets."  *See Nationstar Mortg., LLC*, 182 A.D.3d at 1637 (N.Y. Ct. App. 2020); *see also Sue Ann Clarke as Trustee of Sue Ann Clarke 2012 Spousal GST Trust*, 2023 WL 2992995 at *4.  This fact dooms Bluegrass's request for injunctive relief.  *See, e.g., Sierra Club v. Callaway*, 499 F.2d 982, 991

(5th Cir. 1974) (refusing to enjoin certain acts because "an injunction does not prevent acts which are not within its terms as reasonably construed."). It likewise dooms Bluegrass's request for contempt sanctions. *See e.g., Johnson v. Martin*, 2007 WL 2917244, at *2 (W.D. Mich. Oct. 5, 2007) (finding that defendants were not in contempt of an injunction order because "there [was] not a definite and specific order requiring [d]efendants to perform a particular act or refrain from performing a particular act…"). And, of course, there is no need for injunctive relief because the Court's ruling on the parties' respective declaratory judgment counts resolves the issue of who owns the disputed property.

In addition, this Court can and should "decline to exercise its discretion to grant any relief for contempt under the facts and circumstances of this case." *Matter of MTG, Inc.*, 644 B.R. 702, 720 (Bankr. E.D. Mich. 2022); *see also Walker v. Leikin, Ingber & Winters, P.C.*, 2018 WL 9944941, at *1 (W.D. Mich. Nov. 13, 2018) (declining to hold a party in violation of a court's order in contempt based on "[t]he facts and circumstances of th[e] case…"). Bluegrass resorted to self-help and fraudulently claiming authority to execute real estate transfer documentation on behalf of the Blackjewel Trust in surreptitiously transferring the disputed property to itself. *See* Ex. 19; *see also* Ex. 20. In addition, Bluegrass initiated litigation between the parties. ECF No. 1. By contrast, the Blackjewel Trust did not resort to self-help and attempted to resolve the parties' disputes without this Court's intervention. *See* Ex. 21. After litigation was commenced by Bluegrass, the Blackjewel Trust sought to vindicate its property rights and defend itself via a legitimate use of the legal process. Under such circumstances, the Blackjewel Trust should not be held in contempt and summary judgment in its favor is warranted.

## II.    SUMMARY JUDGMENT IS WARRANTED ON THE COUNTERCLAIMS FOR TRESPASS TO LAND AND SLANDER OF TITLE.

### A.    The Blackjewel Trust Is Entitled to Summary Judgment on the Trespass to Land Counterclaim.

The Blackjewel Trust is entitled to summary judgment on its trespass to land counterclaim. Under Virginia law, which applies to the Lee County Real Property, "[a] trespass is an unauthorized entry onto property which results in interference with the property owner's possessory interest therein." *Rockland Farm, LLC v. White's Ferry, Inc*., 106 Va. Cir. 309, 2020 WL 10458185, at *3 (Cir. Ct. Nov. 23, 2020). "Any physical entry upon the surface of land constitutes such an invasion . . . ." *Commonwealth v. Jones Lang LaSalle Ams., Inc*., 2025 WL 3083816, at *9 (Va. Ct. App. Nov. 5, 2025). This includes "unintentional trespass… or upon acts done accidentally, inadvertently, or by mistake." *Cooper v. Horn*, 248 Va. 417, 423-24 (Va. 1994).

As explained above, the Blackjewel Debtors did not sell—and the Blackjewel Trust still owns—the Lee County Real Property. *See* Ex. 1 at 52 of 162. And there is no dispute that Bluegrass has "accessed and used" the Lee County Real Property, thereby interfering with the Blackjewel Trust's possessory interests. Strobel Dep. at 153:19-154:6. Indeed, since August of 2023, Bluegrass has shipped hundreds of thousands of tons of coal from and across the Lee County Real Property. *See* Ex. 16. Bluegrass's trespass has also harmed the Lee County Real Property, including by disturbing the land and creating additional reclamation and remediation obligations. Taglia Dep. at 159:23-161:23. As a result, the Blackjewel Trust is entitled to summary judgment on its claim that Bluegrass trespassed onto the Lee County Real Property.

### B.    Summary Judgment Is Warranted on the Slander of Title Claim.

The Blackjewel Trust is also entitled to summary judgment on its slander of title claim. Under Virginia law, slander of title requires establishing: "(1) [Bluegrass's] publication of false words, (2) with malice, (3) that disparages [the Trust's] property, and (4) special damages suffered

- 20 -

by [the Trust]." *Muller v. ALG Trustee, LLC*, 2024 WL 3939103, at *8 (W.D. Va. Aug. 26, 2024).

"The malice required to prove slander of title is common law malice, *i.e.,* whether [Bluegrass] knew that [its] statements were false or acted in reckless disregard of the truth or falsity of [its] claim." *In re Quinn*, 4 F.3d 986 (Table), 1993 WL 321583, at *8 (4th Cir. 1993).  These elements are readily satisfied here.

Bluegrass published false statements about the Trust's ownership of the Lee County Property when it publicly recorded a deed of conveyance on January 10, 2024.  *See* Ex. 19; *see also* Ex. 20.  The deed of conveyance was false because Bluegrass had no ownership interest in the Lee County Property even though it represented that it did.  Ex. 19.  Bluegrass acted with malice because it did not investigate whether INMET owned the Lee County Real Property and could convey it to Bluegrass.  Indeed, Bluegrass did not speak with Mr. Hobson or Mr. Beckman about whether the Blackjewel Debtors conveyed the Lee County Property to INMET.  Strobel Dep. at 161:16-24.  Bluegrass did not seek relief from the Court before resorting to self-help and its malice is exacerbated by the surreptitious execution of deeds of conveyance on the Blackjewel Debtors' behalf without Blackjewel's knowledge or consent.  Bluegrass had no legal basis or authorization for doing so.  At a minimum, one would expect that Bluegrass would have notified Mr. Beckman or counsel for the Blackjewel Trust prior to purporting to act on their behalf.

Finally, Bluegrass's statements disparaged the Trust's property by calling its ownership of the Lee County Real Property into question.  *See* Ex. 19.  This has interfered with the Trust's ability to access, make beneficial use of, market, and ultimately sell this property for the benefit of its creditors.  This conduct has also caused the Trust to suffer special damages.  By improperly taking ownership of the Trust's property, Bluegrass deprived the Trust of at least $5.4 million, which is the fair market value of the Lee County Real Property reflected in the deeds of conveyance

executed by Bluegrass. *Id.* Moreover, the Trust has incurred significant attorney's fees and costs seeking to vindicate its property rights.

III.   **THE BLACKJEWEL TRUST IS ENTITLED TO SUMMARY JUDGMENT ON BLUEGRASS'S MUTUAL MISTAKE DEFENSE.**

On November 3, 2025, in a last-ditch attempt to justify its wrongful conduct, Bluegrass sought leave to amend its answer to assert mutual mistake as an affirmative defense. *See* ECF Nos. 49 and 55. Under New York law, which applies based on the INMET APA's choice of law provision, "[a] mutual mistake occurs when both parties . . . share the same erroneous belief and their acts do not in fact accomplish their mutual intent." *Fed. Nat'l Mortg. Ass'n v. 245 Sullivan Ave LLC*, 2025 WL 845174, at *3 (E.D.N.Y. Mar. 18, 2025). Significantly, "there is a heavy presumption that a deliberately prepared and executed written instrument manifests the true intention of the parties' and the proponent of reformation must show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties." *N.Y. First Ave. CVS, Inc. v. Wellington Tower Assoc., L.P.*, 299 A.D. 2d 205, 205 (N.Y. Ct. App. 2002) (quotations omitted). Bluegrass's mutual mistake defense fails for at least two reasons.

*First*, Bluegrass lacks standing to assert mutual mistake. Under New York law, "***a non-party to a contract lacks standing to challenge an agreement in the absence of terms demonstrating that it is a third-party beneficiary.***" *Tamir v. Bank of N.Y. Mellon*, 2013 WL 4522926, at *3 (E.D.N.Y. Aug. 27, 2013) (emphasis added). Similarly, non-parties lack standing to assert contract-specific affirmative defenses. *See, e.g., Shea v. Royal Enters., Inc.*, 2011 WL 43460, at *3 (S.D.N.Y. Jan. 6, 2011) ("as Plaintiff is not a party to the Lease, he lacks standing to assert the Statute of Frauds as an affirmative defense"); *see also County of Tioga v. Solid Waste Indust. Inc.*, 178 A.D.2d 873, 874 (N.Y. Ct. App. 1991) (rejecting lack of consideration defense because that "affirmative defense [was] personal to the parties to the contract and [the judgment

- 22 -

creditor], a stranger to the mortgage and the underlying contract, [could] not assert it."). Bluegrass was not a party to the INMET APA, nor was it an intended third-party beneficiary. *See* Ex. 1. Consequently, it lacks standing to assert that the INMET APA was the product of a mutual mistake.

*Second*, even if Bluegrass had standing (and it does not), there is no factual basis for its mutual mistake defense. Mr. Hobson, INMET's CEO in 2019 who negotiated the agreement, testified that the parties exchanged multiple drafts of the INMET APA to memorialize the final manifestation of the parties' agreement. Hobson Dep. at 72:7-74:5. And Mr. Beckman testified that the Blackjewel Debtors "***intended not to sell [INMET] any real property in Lee County, Virginia***[.]" Beckman Dep. at 57:1-11. Exhibit B to the INMET APA memorialized this intent by expressly excluding the Lee County Real Property from assets sold to INMET. Ex. 1 at 52 of 162. In circumstances like these, where an agreement is deliberately prepared by sophisticated parties with sophisticated counsel, there is a "heavy presumption" that the final document reflects the parties' "true intention." *N.Y. First Ave. CVS, Inc*, 299 A.D. 2d at 205.

Notably, neither INMET nor the Blackjewel Trust have ever taken the position that the INMET APA is the product of a mutual mistake. Neither party to the agreement has asserted mutual mistake as a defense in this litigation. Mr. Beckman, the Blackjewel Trust's Trustee, has repeatedly denied that there was any intent to include Lee County Real Property in the transaction. Beckman Dep. at 56:17-25. And Mr. Hobson refused to agree with Bluegrass's counsel that the Preamble to Exhibit B of the INMET APA expressly excluding real property in counties other than Harlan County, Kentucky and Wise County, Virginia was a mistake. Hobson Dep. at 65:15-66:2. Bluegrass's assertions of a mutual mistake are further belied by the inclusion of a 12-month period after the execution of the INMET APA for INMET to fully analyze the BM/LM operations and request that the Blackjewel Debtors transfer additional real property. Ex. 1 at 44 of 162. This

never occurred.  Accordingly, the Court should grant summary judgment on the mutual mistake

defense.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Blackjewel Trust respectfully requests that the Court grant

its Motion for Partial Summary Judgment.

DATED: February 6, 2026

*/s/ F. Maximilian Czernin*
F. Maximilian Czernin (KY 93674)
Stephen D. Lerner (admitted *pro hac vice*)
Kyle F. Arendsen (admitted *pro hac vice*)
Squire Patton Boggs (US) LLP
201 E. Fourth St., Suite 1900
Cincinnati, Ohio 45202
Telephone: 513.361.1200
Facsimile: 513.361.1201
max.czernin@squirepb.com
stephen.lerner@squirepb.com
kyle.arendsen@squirepb.com

Gregory C. Djordjevic (admitted *pro hac vice*)
Squire Patton Boggs (US) LLP
1000 Key Tower
127 Public Square
Cleveland, Ohio 44114
Telephone: 216.479.8106
Facsimile: 216.479.8780
gregory.djordjevic@squirepb.com

*Counsel for the Defendant and Counterclaim-Plaintiff The Blackjewel Liquidation Trust, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2026, a copy of the foregoing document was filed via

this Court's electronic filing system and that a copy will be served on all counsel of record via that

system.

*/s/ F. Maximilian Czernin*
F. Maximilian Czernin (KY 93674)

*Counsel for Defendant and Counterclaim-Plaintiff*
*The Blackjewel Liquidation Trust, LLC*