**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**PIKEVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INMET MINING, LLC,[1] | ) | Case No. 23-70113-grs |
| | ) | |
| Debtor. | ) | Honorable Gregory R. Schaaf |
| | ) | |
| BLUEGRASS NATURAL | ) | |
| RESOURCES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proceeding No. 25-07001-dll |
| | ) | |
| v. | ) | Honorable Douglas L. Lutz |
| | ) | |
| BLACKJEWEL LIQUIDATION | ) | |
| TRUST by and through DAVID J. | ) | |
| BECKMAN, TRUSTEE, and THE | ) | |
| LIQUIDATING TRUST OF INMET | ) | |
| MINING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| BLACKJEWEL LIQUIDATION TRUST, | ) | |
| LLC by and through DAVID J. BECKMAN, | ) | |
| TRUSTEE, | ) | |
| | ) | |
| Counterclaim-Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BLUEGRASS NATURAL RESOURCES, | ) | |
| LLC, and THE LIQUIDATING TRUST OF | ) | |
| INMET MINING, LLC, | ) | |
| | ) | |
| Counterclaim- | ) | |
| Defendants. | | |

**NOTICE OF APPEAL AND STATEMENT OF ELECTION**

---

[1] The Debtors in this chapter 11 case, and the last four digits of the Debtors' taxpayer identification numbers are as follows: INMET Mining LLC (1693).

**Part 1:  Identify the appellant(s)**

1.      Name(s) of appellant(s):  The Blackjewel Liquidation Trust, LLC.

2.      Position of appellant in the adversary proceeding or bankruptcy case that is the subject of this appeal: Appellant The Blackjewel Liquidation Trust, LLC, is the Defendant-Counterclaimant in the adversary proceeding that is the subject of this appeal.

**Part 2:  Identify the subject of this appeal**

1.      Describe the judgment, order, or decree appealed from: Judgment (ECF No. 94), and all other orders made final and appealable by the judgment and merged into it, including, but not limited to, the Memorandum Opinion and Order Resolving Cross-Motions for Summary Judgment (ECF No. 93).

2.      State the date on which the judgment, order, or decree was entered: April 30, 2026.

**Part 3: Identify the other parties to the appeal**

1.      Party: Bluegrass Natural Resources, LLC (Plaintiff/Counter-defendant).

   a.   Attorneys:

   Nicholas S. Johnson
   BAILEY & GLASSER, LLP
   1055 Thomas Jefferson St. NW, Suite 540
   Washington, D.C. 20007
   Telephone: (202) 463-2101
   Email: njohnson@baileyglasser.com

   John A. Budig
   Daniel M. O'Hare
   BAILEY & GLASSER, LLP
   209 Capitol Street
   Charleston, WV 25301
   Telephone: (304) 345-6555
   Emails: jbudig@baileyglasser.com
           dohare@baileyglasser.com

2.  Party: The Blackjewel Liquidation Trust, LLC (Defendant/Counterclaimant)

    a.  Attorneys:

      F. Maxmilian Czernin
      Stephen D. Lerner
      Kyle F. Arendsen
      SQUIRE PATTON BOGGS (US) LLP
      201 E. Fourth Street, Suite 1900
      Cincinnati, Ohio 45202
      Telephone: (513) 361-1200
      Emails: stephen.lerner@squirepb.com
            max.czernin@squirepb.com
            kyle.arendsen@squirepb.com

      Gregory C. Djordjevic
      SQUIRE PATTON BOGGS (US) LLP
      1000 Key Tower
      127 Public Square
      Cleveland, Ohio 44114
      Telephone: (216) 479-8106
      Email: gregory.djordjevic@squirepb.com

3.  Party: Liquidating Trust of INMET Mining, LLC (Defendant and Counter-defendant)

    a.  Attorneys:

      James R. Irving
      David K. Boydstun
      DENTONS BINGHAM GREENBAUM LLP
      3500 PNC Tower
      101 S. Fifth Street
      Louisville, Kentucky 40202
      Telephone: (502) 587-3606
      Emails: james.irving@dentons.com
            david.boydstun@dentons.com

**Part 4:  Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the

3

appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☑ Appellant(s) elect to have the appeal heard by the United States District Court rather than by
the Bankruptcy Appellate Panel.

**Part 5: Sign below**

*/s/ F. Maximilian Czernin*                    Date: 5/14/2026
Signature of attorney for appellant(s) (or
appellant(s) if not represented by an
attorney)

Name, address, and telephone number of attorney
(or appellant(s) if not represented by an attorney):

F. Maximilian Czernin (KY 93674)
Stephen D. Lerner (admitted *pro hac vice*)
Kyle F. Arendsen (admitted *pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: (513) 361-1200
stephen.lerner@squirepb.com
max.czernin@squirepb.com
kyle.arendsen@squirepb.com

Gregory C. Djordjevic (admitted *pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
1000 Key Tower
127 Public Square
Cleveland, Ohio 44114
Telephone: (216) 479-8106
Email: gregory.djordjevic@squirepb.com

*Counsel for The Blackjewel Liquidation Trust, LLC*

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has
filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

[Note to inmate filers: If you are an inmate filer in an institution and you seek the timing benefit
of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing)
and file that declaration along with the Notice of Appeal.]

4

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing was served electronically via the Court's CM/ECF electronic service.  A copy of the foregoing was also served via electronic mail to the following individuals on May 14, 2026:

Nicholas S. Johnson
BAILEY & GLASSER, LLP
1055 Thomas Jefferson St. NW, Suite 540
Washington, D.C. 20007
Telephone: (202) 463-2101
Email: njohnson@baileyglasser.com

John A. Budig
Daniel M. O'Hare
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
jbudig@baileyglasser.com
dohare@baileyglasser.com

James R. Irving
David K. Boydstun
DENTONS BINGHAM GREENBAUM LLP
3500 PNC Tower
101 S. Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 587-3606
james.irving@dentons.com
david.boydstun@dentons.com

*/s/ F. Maximilian Czernin*
F. Maximilian Czernin

**ECF 93**

**4/30/26 Memorandum Opinion and Order Resolving
Cross-Motions for Summary Judgment**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION**

| | |
|---|---|
| IN RE | CASE NO. 23-70113 |
| INMET MINING, LLC | CHAPTER 11 |
| DEBTOR | |
| BLUEGRASS NATURAL RESOURCES, LLC | PLAINTIFF |
| V. | ADV. NO. 25-7001 |
| BLACKJEWEL LIQUIDATION TRUST by and through DAVID J. BECKMAN, TRUSTEE, *et al.* | DEFENDANTS |

---

| | |
|---|---|
| BLACKJEWEL LIQUIDATION TRUST by and through DAVID J. BECKMAN, TRUSTEE, | COUNTERCLAIM-PLAINTIFF |
| V. | |
| BLUEGRASS NATURAL RESOURCES, LLC, *et al.* | COUNTERCLAIM-DEFENDANTS |

**MEMORANDUM OPINION AND ORDER RESOLVING
CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter concerns the ownership of land located in Lee County, Virginia. The dispute

arises from bankruptcy sales occurring in this Court in 2023 and in the U.S. Bankruptcy Court

for the Southern District of West Virginia (the "West Virginia Court") in 2019. Plaintiff

Bluegrass Resources, LLC ("Bluegrass") contends it purchased the real property in 2023.

Defendant Blackjewel Liquidation Trust, LLC, by and through David J. Beckman, Trustee ("the

Trust")[1] contends the real property was not sold in 2019 and, thus, it owns the property.

---

[1] David Beckman will be referred to as "Beckman" to the extent his personal actions and/or deposition are pertinent. The debtors that went through a bankruptcy process in West Virginia will be referred to collectively as "Blackjewel"

Meanwhile, The Liquidating Trust of INMET Mining, LLC ("LTIM")—essentially the middle-man here—takes no position.

The Court must determine whether either party can be declared the owner of the real property at the summary judgment stage of this adversary proceeding. Bluegrass has moved for a summary judgment on Count One of its Complaint for a declaratory judgment, and also on the Trust's counterclaims. [ECF No. 60 ("Bluegrass Motion").] The Trust filed a reciprocal motion for a summary judgment on Bluegrass's claims, on its own counterclaims for a declaratory judgment, trespass to land, and slander of title, and on Bluegrass's affirmative defense of mutual mistake. [ECF No. 61 (the "Trust Motion").] Bluegrass and the Trust filed Responses and Replies in connection with their Motions. [ECF Nos. 66, 67, 69, & 70.] The Court held oral argument on the Motions and they are ripe for review.

## I.    FACTUAL AND PROCEDURAL BACKGROUND.

Bluegrass and the Trust did not submit statements of undisputed material facts to support their Motions. As between them, the following material facts (a) are admitted in the pleadings (i.e., Bluegrass's Complaint [ECF No. 1 (the "Complaint")], the Trust's Answer and Counterclaims [ECF No. 16 (the "Answer")], and Bluegrass's Amended Answer to Counterclaims [ECF No. 56 (the "Bluegrass Answer")]), and/or (b) are not subject to reasonable dispute based on a review of the parties' filings and the records in this adversary proceeding and the main bankruptcy cases involved (including the plain language of pertinent documents).

### A.  The Blackjewel Bankruptcy.

The Blackjewel Debtors filed voluntary chapter 11 petitions in the West Virginia Court on July 1, 2019, and July 24, 2019.[2] With the West Virginia Court's approval, the Blackjewel

---

or the "Blackjewel Debtors."

[2] Generally, where a recitation of undisputed material facts identifies dates or merely reports or quotes the plain

2

Debtors held an auction to sell assets and designated the bid of Kopper Glo Mining, LLC as the successful bid with respect to the "Assets known as Black Mountain and Lone Mountain[.]" [Bluegrass Answer at ¶ 11.] In September 2019, INMET Mining, LLC ("INMET"), an affiliate of Kopper Glo, acquired assets in a transaction with the Blackjewel Debtors in the Blackjewel bankruptcy cases. The West Virginia Court entered an order approving the terms of the transaction with INMET, including the related contractual agreements. [WV ECF No. 1096;[3] ECF No. 61-2 (the "INMET Sale Order" which attaches the "INMET APA").] [Answer at ¶ 2.]

Paragraph 1(ii) of the INMET APA provides that INMET purchased certain real property (called the "Owned Real Property") from Blackjewel, defined as "[t]he real property interests owned by [Blackjewel] associated with the Transferred Permits and described on Exhibit B attached hereto and made a part hereof and incorporated herein by reference." Exhibit B of the INMET APA contains a list of real property interests that Blackjewel acquired prepetition. Twenty parcels located in Lee County, Virginia are listed on Exhibit B of the INMET APA (the "Real Property").[4]

---

language of documents, there are no record citations supplied.

[3] Filings in the West Virginia Court in the lead Blackjewel bankruptcy case (Case No. 19-30289) are identified as "[WV ECF No. __]." Filings in this Court in the INMET bankruptcy case (Case No. 23-70113) are identified as "[KY ECF No. __]." Documents filed in this adversary proceeding (Adv. Pro. No. 25-7001) are identified as "[ECF No. __]."

The Court may take judicial notice of records in its own docket. *See* FED. R. EVID. 201, *made applicable by* FED. R. BANKR. P. 9017. *See also HIJ Indus. v. Roy (In re Roy)*, 565 B.R. 829, 827 n.4 (Bankr. E.D. Ky. 2017) ("Federal Rule of Evidence 201 permits the Court to take judicial notice of its own court records. *See, e.g., In re Ludwick*, 185 B.R. 238, 240 n.3 (W.D. Mich. 1995)."). In addition, the Court may take judicial notice of proceedings in another court. *See Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999) ("[F]ederal courts may take judicial notice of proceedings in other courts of record.") (quotation omitted); *see also Starlink Logistics, Inc. v. ACC, LCC*, NO. 1:18-cv-00029, 2019 U.S. Dist. LEXIS 92493, *9-10 (M.D. Tenn. June 3, 2019) ("While a court may take judicial notice of the existence of court documents and the proceedings in which those documents were generated, federal courts do not generally take judicial notice of the truth of any statement of fact contained within those documents.").

[4] The Bluegrass Motion defines the "Disputed Assets" as consisting of "disputed properties located in Lee and Wise Counties, Virginia, and Harlan County, Kentucky." [ECF No. 60-1 at 4 n.2.] However, Bluegrass's Complaint states that "[t]his is a declaratory judgment action in which Bluegrass seeks (a) an adjudication that INMET Mining, LLC ("INMET") conveyed certain real property in Lee County, Virginia (the "Lee County Assets") as part of the sale of INMET assets to Bluegrass approved by an Order of this Court. . . ." [ECF No. 1 at ¶ 1.] The Motions frame the pending dispute as one regarding parcels of real property in Lee County. Therefore, while the parties' filings also refer to real property in other counties as "disputed property" or "disputed assets," this Memorandum Opinion only

3

The preamble to Exhibit B of the INMET APA states the real property INMET purchased from Blackjewel includes "the real property interests identified in this Exhibit B or any attachment hereto, to the extent such real property interests [are] associated with the Transferred Permits." [ECF No. 61-2 at 53.] But it also provides: "[f]or the avoidance of doubt, any real property listed [in Exhibit B] below and situated in locations other than Harlan County, Kentucky, or Wise County, Virginia, are specifically excluded from the Owned Real Property [(the 'INMET Purchased Real Property')], unless otherwise agreed upon by Buyer following the Effective Date[.]" [*Id.*] It further states: "[t]he final schedule of Owned Real Property [INMET Purchased Real Property] shall be determined no later than the final determination of the Assumed Leases schedule." [*Id.*]

The West Virginia Court confirmed the Blackjewel Debtors' proposed plan of liquidation on March 22, 2021. [WV ECF No. 3147.] Pursuant to the confirmation order, the West Virginia Court approved Beckman's appointment as the Trustee of the Trust and authorized him to liquidate the Blackjewel Debtors' assets and wind-up the estate. [*Id.*] After the INMET Sale Order's entry, INMET entered the Real Property to convey and process coal. [Answer at ¶ 28.]

### B. The INMET Bankruptcy.

INMET filed a voluntary chapter 11 bankruptcy petition in this Court on April 5, 2023. Counsel for the Trust filed an appearance on April 6, 2023, and Beckman, as Trustee of the Trust, objected to INMET's financing motion on April 10, 2023. [KY ECF Nos. 21 & 57.]

On May 10, 2023, this Court entered an Order (A) Establishing Bidding and Sale Procedures with Respect to the Sale of Substantially All of the Debtor's Kentucky Assets, (B) Authorizing the Entry into One or More Stalking Horse Agreements, (C) Scheduling an Auction

---

analyzes the ownership of what the parties call the Lee County Assets or the Lee County Surface Parcels—referred to herein as the "Real Property."

and Sale Hearing and Approving the Form and Manner of Notice Thereof and (D) Granting

Related Relief. [KY ECF No. 248; ECF No. 60-22.] On June 9, 2023, the Trust filed a

"Preliminary Objection of the Blackjewel Liquidation Trust to Debtor's Sale Order and Cure

Notice," contending INMET could not sell certain assets free and clear of the Trust's royalty

interests. [KY ECF No. 357.] That same day, INMET filed the Notice of Stalking Horse

Agreement between INMET and Black Mountain Marketing and Sales LP ("BMMS"), which

included the Stalking Horse Asset Purchase Agreement as Exhibit A (the "Initial BMMS APA").

[KY ECF No. 358.] The Initial BMMS APA did not provide for the sale of the Real Property.

[*Id.*]

On July 2, 2023, the sale auction was cancelled, BMMS was declared the winning bidder,

and INMET filed (a) a draft order approving the sale to BMMS, and (b) a revised, executed

version of the Initial BMMS APA, neither of which identified the Real Property as part of the

sale. [KY ECF No. 470 & 472.] On July 5, 2023, INMET filed amended schedules, along with

blacklines, to the executed Initial BMMS APA that added the Real Property to Schedule

2.1(d)(i). [KY ECF No. 487.]

On July 10, 2023, five days after the Real Property was listed as part of INMET's asset

sale to BMMS, the Trust filed an "Objection of the Blackjewel Liquidation Trust to Debtor's

Kentucky Assets Sale Order and APA," objecting to the draft sale order and to the approval of

the Initial BMMS APA. [KY ECF No. 509; ECF No. 60-20.] This objection did not expressly

reference that the amended schedules INMET filed on July 5 added the Real Property to

Schedule 2.1(d)(i). But it did contain a footnote stating:

> As acknowledged by the Debtor in Schedules 2.1(d)(i) and 5.4(a) of the APA, the
> Court should take notice that the Debtor never recorded any deeds evidencing the
> transfer of ownership of any real property it may have acquired from the
> Blackjewel Debtors, including the real property the Debtor is seeking to sell to
> BMMS. The impact of this on the proposed sale to BMMS is not clear to the
> Trust but the Trust believes it is relevant to highlight to the Court. In the event

5

that the Debtor seeks to have the Trust execute deeds to evidence the transfer of ownership of real property, the Trust has no obligation, under applicable case law, to take such action because of the Debtor's uncontroverted prepetition material breach of its obligations to the Blackjewel Debtors and the Trust.

[ECF No. 60-20 at 3 n.1.] Then, on July 11, 2023, INMET filed a further revised version of the executed BMMS APA that also included the Real Property on Schedule 2.1(d)(i). [KY ECF No. 513 (the "Initial Bluegrass APA").]

The Court held a sale hearing on July 12, 2023. [KY ECF No. 527.] On July 13, 2023, the Court entered an Order (I) Approving the Sale of Certain Assets to Bluegrass Energy LLC Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief. [KY ECF No. 536; ECF No. 60-16 (the "Bluegrass Sale Order").] The Bluegrass Sale Order authorized INMET to sell certain property to BMMS's affiliate, Bluegrass, and to execute the Initial Bluegrass APA. [Answer at ¶ 4.]

On July 26, 2023, the Trust appealed the Bluegrass Sale Order to the U.S. District Court for the Eastern District of Kentucky. [KY ECF Nos. 570 & 571.] As the district court later explained, "Blackjewel appeal[ed] the bankruptcy court's [Bluegrass Sale Order], insofar as it found (1) that [BMMS] was a good faith purchaser, and (2) that [INMET] could sell the assets to [BMMS] 'free and clear' of the royalty obligations." [KY ECF No. 954; ECF No. 60-12.] The court later dismissed the Trust's appeal from the Sale Order as moot under § 363(m).[5] [*Id.*]

**C. The Bluegrass APA and Sale Order.**

On July 28, 2023, Bluegrass acquired property from INMET via the Bluegrass Sale Order and the Bluegrass APA. [Bluegrass Answer at ¶ 47.] Bluegrass then started to operate on the Real Property. Later, LTIM was formed as the successor entity to INMET. [ECF No. 17 at 7-8.]

---

[5] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

6

The preamble of the Bluegrass Sale Order defines the "Purchased Assets" as "[INMET's]

properties and assets being sold pursuant to the Stalking Horse Agreement." It defines the

"Stalking Horse Agreement" as INMET's "Stalking Horse Asset Purchase Agreement with the

Stalking Horse Bidder (as subsequently, amended, modified, and supplemented[).]" Paragraph K

("Purchased Assets Property of Debtor's Estate") provides that "[t]he Purchased Assets to be

transferred and/or assigned, as applicable, to [Bluegrass] . . . constitute property of [INMET's]

estate within the meaning of Section 541(a) of the Bankruptcy Code." Paragraph Z ("Validity of

Transfer") states that "the transfer of the Purchased Assets to [Bluegrass] will be a legal, valid,

and effective transfer of the Purchased Assets, and will vest [Bluegrass] with all rights, title, and

interest of [INMET] in and to the Purchased Assets, free and clear of all Liens, Claims, and

Interests." Paragraph 7.A ("Transfer of Assets Free and Clear") provides that INMET "is

authorized and directed to transfer the Purchased Assets with the terms of the [Bluegrass APA]

Stalking Horse Agreement free and clear of all Liens, Claims, and Interests."

On August 10, 2023, INMET filed an Amended and Restated Stalking Horse Asset

Purchase Agreement between INMET and Bluegrass. [KY ECF No. 617; ECF No. 60-15 (the

"Bluegrass APA").]. Paragraph 1.1 thereof defines "Owned Real Property" as "all real property

owned by [INMET], and all right, title and interest of [INMET] therein . . . ." Paragraph

2.1(d)(i), which sets forth the assets Bluegrass purchased from INMET, provides that INMET

sold all "Owned Real Property wherever situated, including, without limitation, the Owned Real

Property listed in Schedule 2.1(d)(i)." On Schedule 2.1(d)(i), INMET conveyed the "Owned Real

Property" to Bluegrass, including the Real Property. Paragraph 5.4(a), which contains INMET's

representations and warranties, states that "Schedule 5.4(a) sets forth an accurate and complete

list of the Owned Real Property as of the Execution Date." And on Schedule 5.4(a), INMET

again conveyed the "Owned Real Property" to Bluegrass, including the Real Property.

7

On January 10, 2024, Bluegrass executed a Deed transferring the Real Property from Lone Mountain Processing, LLC (a Blackjewel Debtor) to INMET, and it was recorded on January 31, 2024. [ECF No. 66-2.] Bluegrass next executed a Deed of Correction involving the same parties on February 14, 2024, which was recorded on February 22, 2024. [ECF No. 66-3.] Bluegrass then executed a Deed transferring the Real Property from INMET to Bluegrass on February 15, 2024, and it was recorded on March 7, 2024. [ECF No. 66-4.]

**D. The Current Litigation.**

On April 4, 2024, the Trust's counsel sent a letter to counsel for Bluegrass and LTIM, requesting, among other things, confirmation that the Real Property was not sold or transferred to INMET and thereafter to Bluegrass. [Answer at ¶ 7.] On April 12, 2024, Bluegrass sent a letter to the Trust disagreeing that the Real Property had not been transferred. [*Id.* at ¶ 45.] Bluegrass and the Trust then filed adversary proceedings in this Court and the West Virginia Court, respectively, which were dismissed or stayed. [*Id*. at ¶¶ 49-52.]

After some more procedural wrangling, Bluegrass filed its Complaint to initiate this Adversary Proceeding on January 15, 2025. After Bluegrass and the Trust timely filed motions for summary judgment, responses, and replies, the Court heard argument on April 16, 2026.

## II.     JURISDICTION.

The Court has jurisdiction over this adversary proceeding. 28 U.S.C. § 1334(a). Venue is proper in this District. 28 U.S.C. § 1409. This is a core proceeding. 28 U.S.C. § 157(b)(2)(E),(F), and (H). The parties have consented to the Court's entry of final orders or a judgment.

## III.    ANALYSIS.

### A. Summary Judgment Standard.

As this Court has explained, the proper standard of review for cross-motions for summary judgment is as follows:

> Summary judgment is appropriate when the evidence, construed in the light most favorable to the non-movant, confirms that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c), applicable herein pursuant to FED. R. BANKR. P. 7056 . . .; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 [ ] (1986). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 [ ] (1986). On a motion for summary judgment, "the judge's function is not [herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. at 249.
>
> The parties have filed cross-motions for summary judgment . . . . The summary judgment standard does not change when each side seeks a summary judgment in their favor. *Taft Broadcasting Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991). "The court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id*.

*In re Bentley*, 607 B.R. 889, 893 (Bankr. E.D. Ky. 2019), *aff'd*, *Bentley v. OneMain Fin. Grp., LLC (In re Bentley)*, No. 19-8026, 2020 Bankr. LEXIS 1837 (B.A.P. 6th Cir. July 8, 2020).

When these elements are met, courts in the Sixth Circuit have held that a declaratory judgment can be rendered via summary judgment. *See*, *e.g.*, *French v. Cahill (In re Cahill)*, No. 08-3211, 2008 WL 5441229 (Bankr. N.D. Ohio Dec. 3, 2008); *Evangelista v. Silver, et al. (In re Silver)*, 647 B.R. 897 (Bankr. E.D. Mich. 2022). Further, a summary judgment can be granted that resolves claims pursuant to the doctrine of res judicata. *See*, *e.g.*, *Kreitzer v. Household Realty Corp., et al. (In re Kreitzer)*, 489 B.R. 698 (Bankr. S.D. Ohio 2013); *Bruinsma v. Wigger (In re Wigger)*, 595 B.R. 236 (Bankr. W.D. Mich. 2018).

### B. Bluegrass is entitled to a Summary Judgment on its Declaratory Judgment Claim (Bluegrass Complaint, Count One) and against the Trust's Counterclaims.

Bluegrass seeks a summary judgment granting it a declaratory judgment stating it owns the Real Property and dismissing the Trust's counterclaims based on the doctrine of res judicata. In opposition, the Trust asserts that Bluegrass has not established that each res judicata element is met here. As explained below, the Court finds each element is satisfied and will grant a summary judgment to Bluegrass as requested.

9

### 1.  Applicable Law.

"Pursuant to the doctrine of res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Autumn Wind Lending, LLC v. Est. of Siegel by & through Cecelia Fin. Mgmt., LLC*, 92 F.4th 630, 634 (6th Cir. 2024) (citation modified). The party contending res judicata (or claim preclusion) applies bears the burden of proof. *Id.* (quoting *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008)). The following elements establish a basis to employ res judicata in the Sixth Circuit:

> (1) a final decision on the merits by a court of competent jurisdiction;
> (2) a subsequent action between the same parties or their "privies";
> (3) an issue in the subsequent action was or should have been litigated in the prior action; and
> (4) an identity of the causes of action.

*Inmet Mining, LLC v. Blackjewel Liquidation Trust, et al. (In re Inmet Mining, LLC)*, Adv. No. 23-7002, 2023 WL 4411852, at *7–8 (Bankr. E.D. Ky. July 7, 2023) (quoting *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009)).

As to the first two elements, in the Sixth Circuit, "a bankruptcy court's sale order is a final order for res judicata purposes, not only because it is in line with our holdings that an order confirming a reorganization is a final order, but also because it is in line with the policy behind res judicata." *Winget,* 537 F.3d at 578. To hold otherwise would allow parties to litigate sale orders long after the sale, an outcome courts should avoid. *Id.* Next, "[r]es judicata bars not only the actual parties to an earlier bankruptcy proceeding from later bringing suits which should have been brought in the context of the proceeding, but also those in privity with the parties," including a successor in interest. *Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002). The term "party" should not be construed narrowly as it "would also run counter to the provisions in the Code which outline the effect of plans and offer methods for challenging the bankruptcy orders." *Sanders Confectionery Prods., Inc. v. Heller Fin.*, Inc., 973 F.2d 474, 481 (6th Cir. 1992).

10

For the third element, the Court must determine whether the party's claims could or should have been raised in the prior action. *Winget*, 537 F.3d at 579. The Sixth Circuit has adopted a broad definition for this element to include any claim that could conceivably have any effect on the administration of a bankruptcy estate or otherwise falls under the "related to" jurisdiction of the bankruptcy court. *Id.* Notably, res judicata "bars a party from bringing any claim that *should* have been litigated in the earlier proceeding. '[W]hat is important is not whether a particular claim is compulsory, but whether the claim should have been considered during the prior action.'" *Id.* at 580 (quoting *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir. 1992)). In *Winget*, for example, the Sixth Circuit found this element satisfied because the plaintiff's claims attacked the heart of a prior sale order (the value of the estate's assets) and, thus, "[t]hose claims should only have been brought before the bankruptcy court issued the Sale Order." *Id.*

The last element "requires that there be an 'identity of claims,' which is satisfied if 'the claims arose out of the same transaction or series of transactions,' or if 'the claims arose out of the same core of operative facts.'" *Id.* (citation modified). "A different legal theory, based on the same set of facts as in the prior action[,] will not save the claim from res judicata." *Giese v. Cmt. Trust Bank (In re HNRC Dissolution Co.)*, 549 B.R. 469, 483 (Bankr. E.D. Ky. 2016).

In this case, the parties do not dispute that the Bluegrass Sale Order is a final order, this action involves the same parties or their privies as to the Bluegrass Sale Order in the INMET main case, and who owns the Real Property arises from the same nucleus of operative facts in both matters. The Court must address two disputed elements: whether (a) the issue of the Real Property's ownership could and should have been raised in INMET's main bankruptcy case, and

11

(b) the Bluegrass Sale Order was issued by court of competent jurisdiction.

### a. Who owned the Real Property could and should have been litigated in the INMET main case.

Bluegrass argues the Real Estate's ownership "was in play during the INMET

bankruptcy, and the Trust was obligated to raise it." [ECF No. 60-1 at 18.] To support its view,

Bluegrass cites the Trust's footnote in its objection to the Bluegrass Sale Order, which states:

> the Court should take notice that the Debtor never recorded any deeds evidencing
> the transfer of ownership of any real property it may have acquired from the
> Blackjewel Debtors, including the real property the Debtor is seeking to sell to
> BMMS. The impact of this on the proposed sale to BMMS is not clear to the
> Trust but the Trust believes it is relevant to highlight to the Court.

[ECF No. 60-20 at 3 n.1.] Bluegrass asserts the Trust tacitly demonstrated it should have and

could have litigated whether INMET owned the Real Property in INMET's bankruptcy case by

raising this issue in its objection, while choosing not to further pursue it in the main case or in its

appeal of the Bluegrass Sale Order.

Bluegrass also cites res judicata case law, including *Hazard Coal Corp. v. Amer.

Resources Corp. (In re Cambrian Holding Co., Inc.)*, No. 19-51200, 2020 WL 214746 (Bankr.

E.D. Ky. Jan. 3, 2020). In that case, Hazard Coal Corporation had a prepetition lease with a

debtor. It did not object to the sale of the debtor's assets until a minute after the sale hearing had

begun. Hazard then filed an adversary proceeding, seeking a declaration that its lease with the

debtor terminated prepetition. It argued the lease was not part of the property transferred to the

buyer at the sale and later sought a temporary restraining order to prevent the buyer from

entering the property and acting under the lease. This Court found res judicata barred Hazard

from disputing the lease assignment to the buyer and that Hazard's failure to timely object per

the sale order's terms barred it from doing so later: "Hazard Coal had early notice of the

Debtors' intentions and had the burden to assert any defenses prior to the assumption and

assignment of the Lease." *Id.* at *6. Bluegrass also cites other cases from within the Sixth Circuit

12

and elsewhere to argue that a failure to timely object to a sale bars a later objection to that sale. [ECF No. 60-1 at 21.] In sum, Bluegrass contends the Trust effectively consented to the sale to Bluegrass because it did not pursue its claim to ownership of the Real Property in connection with the consideration and entry of the Bluegrass Sale Order. [*Id.* at 22 (citing *In re Junk*, 566 B.R. 897, 916 (Bankr. S.D. Ohio 2017)).]

In contrast, the Trust contends res judicata is inapplicable because the Court did not decide who owned the Real Property when it entered the Bluegrass Sale Order and, further, that INMET could not sell what it did not own. [ECF No. 67 at 33.] Its argument heavily relies on its view that the INMET APA did not transfer ownership of the Real Property to INMET. The Trust also posits that the Bluegrass Sale Order did not interpret the INMET APA or include a factual finding that Blackjewel transferred the Real Property to INMET via the INMET APA. In support, the Trust cites *In re Zota Petroleums*, *LLC*, 482 B.R. 154 (Bankr. E.D. Va. 2012), in which the court held res judicata was not implicated when a sublessee moved for recognition of rights under a sublease a debtor had rejected, and the purchaser argued it acquired the underlying lease free and clear of the sublessee's interests. The court explained: "[t]he prior cause of action here was whether the sale should be approved, and there was no consideration of what rights [the sublessee] would have as a result. Thus, *res judicata* is not implicated, despite the argument of [the purchaser] that the issue could have been raised." *Id.* at 164.

Similar to *Zota*, the Trust argues, the Bluegrass Sale Order did not address any effect its entry would have on the Trust's ownership of the Real Property; rather, the Court entered this order only to approve a sale of assets in INMET's estate. [ECF No. 67 at 35.] The Trust also asserts that because Bluegrass was the party that initiated this proceeding, and because the same court that issued the Bluegrass Sale Order is adjudicating this dispute, there is no reason to apply res judicata because this Court can decide in this proceeding what it transferred via the Bluegrass

13

Sale Order. [*Id.* (citing *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 534 (7th Cir. 2003)).]

The Court finds the Trust could and should have litigated the ownership issue in connection with the Court's consideration of the Bluegrass Sale Order. Importantly, the Sixth Circuit has an expansive view of this element. "According to the Sixth Circuit, the key focus is not whether the claim is compulsory, but 'whether the claim should have been considered during the prior action.'" *Pidcock v. Schwab*, 569 B.R. 463, 469 (N.D. Ohio 2017). "To determine whether an issue should have been litigated in an earlier lawsuit, the Sixth Circuit says that '[w]here the two causes of action arise from the 'same transaction, or series of transactions,' the plaintiff should have litigated both causes in the first action and may not litigate the second issue later.'" *Pidcock v. Goddard, et al. (In re SII Liquidation Co.)*, Adv. No. 14-6016, 2014 WL 5325930, at *9 (Bankr. N.D. Ohio Oct. 17, 2014) (quoting *Holder v. City of Cleveland*, 287 Fed. Appx. 468, 471 (6th Cir. 2008)).

Here, the parties did not "litigate" who owned the Real Property in connection with the Bluegrass Sale Order, but the Trust—which chose to raise but not develop the issue—presents nothing to show it could and should not have been litigated at that time. As explained above, the Trust was active in the INMET bankruptcy case.[6] It could have pursued this ownership argument in connection with INMET's sale to Bluegrass but chose not to. In fact, the *Trust questioned INMET's ownership of the Real Property in its objection to the Bluegrass Sale Order*. If it merited a mention in the Trust's objection—showing the Trust's awareness of the issue—it could and should have been pursued to a conclusion in INMET's main bankruptcy case. A finding that

---

[6] During the INMET bankruptcy, the Trust filed several objections to the sale of INMET's assets. [*See, e.g.*, KY ECF Nos. 357, 382, 509.] While these objections did not touch on the ownership issues that have been discussed herein, they show the Trust participated actively in INMET's bankruptcy case and took the opportunity to present arguments when it chose to do so.

14

INMET did not own the Real Property would have had a major impact on INMET's estate and would have changed the terms of the Bluegrass Sale Order and Bluegrass APA.

Another opinion this Court issued a few years ago also is instructive. *See Giese v. Community Trust Bank, et al. (In re HNRC Dissolution Co.),* 549 B.R. 469 (Bankr. E.D. Ky. 2016). In *HNRC*, the plaintiff filed a lawsuit claiming ownership of funds that two other parties had purchased via a sale order in a bankruptcy case. In response, the defendants argued res judicata barred the plaintiff's claims. The plaintiff contended res judicata did not apply as his predecessors in interest did not appear in the bankruptcy case and there was no adjudication on the merits of their claims to the funds. The Court held res judicata barred the plaintiff's claims as the plaintiff's predecessors could and should have brought these claims forward in the prior bankruptcy proceeding. They received notice and a fair opportunity to litigate the ownership issue prior to the sale and any claim to the disputed funds could and should have been raised in connection with the sale. *Id.* at 481-82. The Bankruptcy Appellate Panel and the Sixth Circuit affirmed. 585 B.R. 837, 847 (B.A.P. 6th Cir. 2018); 761 F. App'x 553, 564-65 (6th Cir. Jan. 24, 2019). That reasoning applies even more here. In *HNRC*, the plaintiff's *predecessors* received *publication notice* of the confirmation hearing and failed to appear or object to confirmation.  In this case, the *Trust itself appeared*, raised the ownership issue in a footnote, objected to the sale for other reasons, and appealed the sale order on other grounds.

Finally, the Trust's heavy dependence on *Precision Industries*, a non-binding and out-of-circuit case, is misplaced. Indeed, courts in the Seventh Circuit have disagreed with the premise from the case that the Trust relies on: that res judicata is inapplicable when a bankruptcy court is asked to evaluate its own prior order. *See In re J.S. II, L.L.C.*, 389 B.R. 570, 585 (Bankr. N.D. Ill. 2008) ("*Precision Industries* dealt with a dispute regarding property interests *resulting* from the sale order, not issues attacking the sale order itself. Therefore, [a] broad reading of *Precision*

15

*Industries* that *res judicata* is inapplicable when the issue is heard before the same judge who issued the sale order is not persuasive."); *In re marchFirst, Inc.*, 448 B.R. 499, 516 n.16 (Bankr. N.D. Ill. 2011) (explaining that "[t]he court in [*Precision Industries*] expressed no intention to depart from the long-standing notion that 'normal rules' of preclusion apply in bankruptcy. . ." and that later cases have read *Precision Industries* vary narrowly).

Beyond *Precision Industries,* the Trust also cites several other out-of-circuit cases. But courts in the Sixth Circuit do not apply the res judicata standards of other circuits. *See Pidcock,* 569 B.R. at 478 (rejecting the adoption of the Third and Eleventh Circuits' res judicata standards, citing *Winget*, 537 F.3d at 580-81).

Who owned the Real Property could and should have been litigated in INMET's main bankruptcy case. The Trust had the opportunity to do so and even acknowledged it knew about this issue when it objected to the Bluegrass Sale Order. For whatever reason, it chose not to pursue this argument then, and it may not do so now. This element is satisfied.

### b.  The Court had jurisdiction to sell the Real Property via the Bluegrass Sale Order.

The Trust also avers that res judicata is inapplicable because the Court lacked jurisdiction to convey the Real Property to Bluegrass as it was not property of INMET's estate. For support, the Trust again primarily relies on out-of-circuit case law. For example, the Trust cites *Rutherford Hospital, Inc. v. RNH Partnership*, wherein the Fourth Circuit found that "the bankruptcy court in this case lacked jurisdiction to transfer any assets to Rutherford that not only were not part of [the debtor's] estate, but did not even exist at the time of the bankruptcy sale." 168 F.3d 693, 699 n.8 (4th Cir. 1999). The Trust also cites *In re Mariner Post-Acute Network, Inc.*, 267 B.R. 46 (Bankr. D. Del. 2004), in which the court explained it could not and did not convey property to another party in which the debtor did not have an interest. *Id.* at 60. Even if

16

the court's prior order purported to do this, the Delaware court stated, it did so "to the extent that [the assets] constituted property of the estate." *Id.* at 59.

The Trust asserts the same reasoning applies here: the Bluegrass Sale Order only could convey property in INMET's bankruptcy estate, which did not include the Real Property. [ECF No. 67 at 30-31.] The Trust contends this Court's statements in a hearing on the Trust's motion to stay a prior adversary proceeding are in line with this premise. Specifically, the Trust cites statements that (a) expressed concern over what assets Blackjewel sold to INMET that could be transferred to Bluegrass, and (b) questioned whether the parties had presented him with proof of ownership of the assets. [*Id.* at 31.]

Bluegrass argues the Court had jurisdiction to sell the Real Property as "INMET's bankruptcy estate had at least a disputed interest in the [Real Property], and so those assets were part of INMET's bankruptcy estate." [ECF No. 69 at 13.] Bluegrass also avers that because the Trust failed to stay INMET's sale to Bluegrass and the district court considered and dismissed the Trust's appeal from the Bluegrass Sale Order, the Court was a court of competent jurisdiction for res judicata purposes when it entered the Bluegrass Sale Order. [*Id.* at 13-14.] Additionally, Bluegrass asserts that the Court has "arising in" jurisdiction under § 1334(b) to interpret and enforce the Bluegrass Sale Order in this proceeding. [*Id.* at 14.] In support, Bluegrass cites the Court's retention of jurisdiction to interpret and enforce the Bluegrass Sale Order [ECF No. 60-16 at 42] and Sixth Circuit case law to demonstrate that the Court has jurisdiction to interpret its previous sale order. [ECF No. 69 at 14.]

During oral arguments, Bluegrass emphasized *Parker v. Goodman (In re Parker)*, 499 F.3d 616 (6th Cir. 2007), supports its view. In *Parker*, the plaintiff filed a chapter 7 case as counsel for the defendant. The defendant then sued the plaintiff in state court for legal malpractice and breach of fiduciary duty related to that representation. While the state action was

17

pending, viewing the legal malpractice claims against the plaintiff as property of the bankruptcy estate, the chapter 7 trustee sold the claims, and the bankruptcy court entered an order approving the sale. The defendant did not appeal the sale order or obtain a stay but continued to prosecute the legal malpractice suit. The plaintiff then filed an adversary complaint to enjoin the defendant from prosecuting the state court case, contending the defendant did not own the claims, and a permanent injunction eventually was granted. On appeal, the defendant argued the bankruptcy court lacked jurisdiction to issue the injunction "because the legal malpractice suit—or at the very least, one claim for relief—accrued after his bankruptcy petition was filed and, accordingly, was not 'property of the estate.'" *Id.* at 620.

The Sixth Circuit examined § 363(m) and how other circuits have analyzed arguments that assets sold in bankruptcy were not part of the estate and, thus, that the bankruptcy court lacked jurisdiction to sell them. *Id.* at 622-24. After explaining several courts had rejected this argument, the Sixth Circuit held:

> All this cataloguing of precedent is to say we are in good company when we reject Defendant's jurisdictional attack on statutory mootness. This is not a case where the bankruptcy court "usurped power," as by "approv[ing] the sale of assets not even colorably within its jurisdiction.". . . The bankruptcy court below "at least arguably" had jurisdiction over the legal malpractice suit.

*Id.* at 624 (citation modified). Additionally, the Sixth Circuit declined to decide on the merits whether the malpractice claim was part of the bankruptcy estate because "[t]o engage in a discussion of this question on the merits would be to defeat the very purpose of the bankruptcy mootness provision." *Id.* It ultimately ruled that the defendant's collateral attacks on the sale order were moot under § 363(m). *Id.* at 626; *see also Clearview Energy, LLC v. Mammoth Res. Partners, Inc.*, 491 B.R. 489, 493 (W.D. Ky. 2013) ("Since § 363(m) moots appeal from an unstayed order of sale regardless of claims that the property sold did not constitute property of the estate, the Court finds that Appellee's attempt to overrule the Sale Order [is] moot.").

18

Here, the Court finds that *Parker*'s reasoning applies and the Trust's argument fails. First, a bankruptcy court has broad jurisdiction over matters relating to a bankruptcy estate. *See, e.g., Kentucky Auto. Ctr. of Grayson, LLC v. Nissan N. Am., Inc.*, Civil Action No. 12-48-HRW, 2013 WL 663574, at *4 (E.D. Ky. Feb. 22, 2013) ("A bankruptcy court is competent to hear all claims that affect the bankruptcy estate."). Further, while *Parker* primarily dealt with statutory mootness under § 363(m), its jurisdictional analysis is on point for this situation. If § 363(m) moots an unstayed appeal of a sale order even if the appellant contends the bankruptcy court lacked jurisdiction to convey property sold, by implication the bankruptcy court's jurisdiction to enter the sale order is not reviewable absent a stay.

The same reasoning applies here. The Trust appealed the Bluegrass Sale Order. It did not obtain a stay, and the district court thus dismissed the Trust's appeal from the Bluegrass Sale Order as moot under § 363(m). [KY ECF No. 954.] As a result, the Trust missed its opportunity to argue this Court lacked jurisdiction to enter the Bluegrass Sale Order.

Further, there is no genuine dispute of material fact that, at a minimum, INMET had some interest in the Real Property. It is undisputed that INMET was operating on the Real Property prior to its bankruptcy, giving it, at a minimum, a possessory interest. [Answer at ¶ 28.] The Real Property was listed on Exhibit B to the INMET APA as land associated with the permits INMET acquired from Blackjewel [ECF No. 61-2 at 54-58], and the ability to possess a permit connotes a legal right to enter and conduct operations on the land covered thereby. *See, e.g.*, VA. CODE ANN. § 45.2-1205. Further, INMET's former CEO confirmed his belief that INMET acquired the Real Property via the INMET APA. [Deposition of Hunter Hobson, ECF No. 60-4 at 26:16-28:9, 59:9-16.] These facts alone distinguish this matter from *Rutherford Hospital*, the Trust's primary authority on this issue. In that case, the Fourth Circuit found the bankruptcy court lacked jurisdiction to transfer a certificate of need to operate a nursing home

19

facility as part of the debtor's estate because such a certificate *did not exist at the time of the sale*. *Rutherford Hosp.*, 168 F.3d at 699. This contrasts markedly with the question of whether INMET had an interest in the Real Property.

The Trust's reliance on the Delaware bankruptcy court's decision in *Mariner* also is misplaced. The *Mariner* court applied the Third Circuit's res judicata standard and the Sixth Circuit has rejected this standard. *See Winget*, 537 F.3d at 580 (refusing to adopt the Third Circuit's "identity of claims" test for res judicata as doing so would not "be in line with current res judicata jurisprudence in this circuit, which has adopted the traditional view of identity as a res judicata element."). Ultimately, the Court's "obligation [is] to apply the law of the Sixth Circuit to this case, and not to follow the decisions of other circuits." *Kolesar v. Allstate Ins. Co.*, No. 1:19 CV 35, 2019 WL 2996047, at *3 (N.D. Ohio July 9, 2019).

Therefore, the Court finds that the Bluegrass Sale Order was issued by a court of competent jurisdiction. This element is satisfied.

### c. Conclusion.

For these reasons, the Court finds that Bluegrass has shown as a matter of law that res judicata applies. Specifically, the Court finds: (1) the Bluegrass Sale Order was a final decision on the merits that was issued by a court of competent jurisdiction; (2) this subsequent action is between the same parties or their privies; (3) the issue of the Real Property's ownership could have and should have been litigated in the INMET bankruptcy case; and (4) the dispute arises from the same common nucleus of operative facts as the INMET bankruptcy case. Thus, the Court will grant a summary judgment in Bluegrass's favor on Count One of its Complaint, awarding a declaratory judgment that Bluegrass owns the Real Property.[7] Because, as the Trust

---

[7] Bluegrass's Count One also seeks a declaratory judgment against LTIM. [Complaint at 10.] But the Bluegrass Motion does not seek relief against LTIM. The Court will enter an order contemporaneously herewith concerning Bluegrass's claim against LTIM.

conceded at oral argument, its counterclaims rely on the premise that it owns the Real Property,

Bluegrass also is entitled to a summary judgment dismissing the Trust's counterclaims.[8] As a

result, the Court need not examine the contractual interpretation issues and related affirmative

defenses pertaining to the INMET APA.

**C. The Trust is entitled to a Summary Judgment on Bluegrass's Injunctive Relief and Contempt Claims (Bluegrass Complaint, Counts Two and Three).**

The Bluegrass Complaint contains requests for injunctive relief and contempt damages

against the Trust. As to injunctive relief, in Count Two, Bluegrass contends the Bluegrass Sale

Order precludes the Trust from pursuing any claims against Bluegrass or against assets it

purchased from INMET and argues the Bluegrass Sale Order bars the Trust's actions (asserting a

continuing interest in, and trying to market/sell, the Real Property). [Complaint at ¶¶ 64-65.]

Count Two asks the Court to enjoin the Trust "from asserting any continuing interest in or

ownership of … and taking any further steps to market or sell the" Real Property. [*Id.* at ¶ 66.]

The claim for a finding of contempt in Count Three is related insofar as Bluegrass contends the

Trust's conduct is "intentionally, willfully, and wantonly in violation of the injunctive provisions

of the Bluegrass Sale Order[.]" [*Id.* at ¶¶ 68-69.]

The Trust primarily argues Bluegrass is not entitled to injunctive relief or contempt

sanctions because it does not own the Real Property. For the reasons stated above, this view

lacks merit. Beyond that argument, however, the Trust cites pertinent authority supporting the

proposition that injunctive relief is unnecessary insofar as, if Bluegrass ultimately wins on its

claim of ownership on its declaratory judgment claim, it will have received an adequate remedy

---

[8] The Trust's Counterclaims One through Three are asserted against both Bluegrass and LTIM and seek a declaratory judgment and damages for unjust enrichment and trespass to land. The Court concludes the Trust is not entitled to a judgment in its favor on the ownership of the Real Property and, if the Trust does not own the Real Property, no party can be liable to the Trust under the asserted causes of action. Accordingly, these counterclaims are dismissed as against both Bluegrass and LMIT.

at law. [ECF No. 70 at 22 (citing, inter alia, *Brown v. U.S.*, 692 F.3d 550, 552-53 (6th Cir.

2012)).] It asserts contempt sanctions are not warranted because: (1) Bluegrass initiated the

litigation between the parties; (2) the Trust did not resort to self-help and tried to resolve this

dispute extra-judicially; and (3) it "sought to vindicate its property rights and defend itself via a

legitimate use of the legal process." [ECF No. 61-1 at 19.]

     While the Complaint alleges a stand-alone claim for "injunctive relief" against the Trust

in Count Two, "an injunction is a remedy, not a claim." *Madej v. Maiden*, 951 F.3d 364, 369 (6th

Cir. 2020); *see also Huntington Nat. Bank v. Guishard, Wilburn & Shorts, LLC*, No. 2:12-CV-

1035, 2012 WL 5902916, at *6 n.1 (S.D. Ohio Nov. 26, 2012) ("An injunction, however, is not a

cause of action, but a remedy."). Bluegrass's "claim" for injunctive relief is therefore not proper

and instead should have been presented as relief sought for a substantive cause of action.

Moreover, the Trust sought a summary judgment on this "claim," and, in response, Bluegrass

made no effort to satisfy the four-part standard for granting permanent injunctive relief. *See, e.g.*,

*Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) ("A plaintiff seeking a permanent

injunction must demonstrate that it has suffered irreparable injury, there is no adequate remedy at

law, 'that, considering the balance of hardships between the plaintiff and defendant, a remedy in

equity is warranted,' and that it is in the public's interest to issue the injunction." (citation

omitted)). The Trust is entitled to a summary judgment dismissing this "claim."

     As for the Trust's request for a summary judgment on Bluegrass's contempt claim, the

Sixth Circuit explained the applicable standard for relief based on a violation of an order

enjoining conduct as follows:

> "A court's ability to issue injunctions, and then enforce those injunctions with a
> finding of contempt, springs from the court's inherent equitable powers."
> *Innovation Ventures, [LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 544 (6th Cir.
> 2014)] (citing *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 [ ] (1946)). In
> order to support a motion for civil contempt, a plaintiff has "the burden of
> establishing by clear and convincing evidence that [the defendant] 'violated a

22

> definite and specific order of the court requiring [the defendant] to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)). There is no requirement to show intent beyond knowledge of the order. *In re Jaques*, 761 F.2d 302, 306 (6th Cir. 1985).

*CFE Racing Prods. v. BMF Wheels, Inc.*, 793 F.3d 571, 598 (6th Cir. 2015).[9] A court has discretion in matters of contempt. *See, e.g., In re Hake*, No. 06-8014, 2006 WL 2846277, at *1 (B.A.P. 6th Cir. Oct. 3, 2006) ("A decision on a contempt petition is within the sound discretion of the trial court[.]") (citations omitted).

While the Trust arguably violated the Bluegrass Sale Order by disputing Bluegrass's ownership of the Real Property, it is also true that this is a challenging and hotly disputed case, particularly given the INMET APA's contradictory and ambiguous provisions and the recognized quirks of the asset sale in the Blackjewel bankruptcy case. Further, Bluegrass filed this proceeding against the Trust, seeking a declaratory judgment on the ownership of the Real Property. A declaratory judgment only may be pursued under federal law if a justiciable controversy is presented, meaning the parties seek resolution of a concrete dispute that is real and substantial, with actually adverse legal interests. *See, e.g., Heritage Guitar, Inc. v. Gibson Brands, Inc.*, No. 1:20-CV-229, 2021 WL 911961, at *3 (W.D. Mich. Mar. 10, 2021) (explaining that under the Declaratory Judgment Act, "declaratory judgments can only be issued with respect to 'a case of actual controversy within its jurisdiction.'"). Given the complexity of the issues involved, the underlying factors that led to confusion about the Real Property's ownership, and Bluegrass's representation to the Court in its Complaint that who owned the Real Property presented a real and substantial dispute, Bluegrass has not proven by clear and convincing evidence that contempt sanctions against the Trust are appropriate. Thus, the Court will grant

---

[9] Bluegrass cites *Taggart v. Lorenzen*, 587 U.S. 554 (2019), for the legal standard applicable to contempt, but that case dealt with contempt specific to a discharge injunction violation, an aspect of the Code that is not at issue here.

23

summary judgment in favor of the Trust on Bluegrass's claim for contempt sanctions.

IV.    **CONCLUSION.**

For the foregoing reasons, IT IS ORDERED:

1.  The Bluegrass Motion [ECF No. 60] is GRANTED. Bluegrass shall be awarded a summary judgment as against the Trust (a) as to its Count One (Declaratory Judgment) on ownership of the Real Property, and (b) dismissing the Trust's Counterclaims One through Six.

2.  The Trust's Motion [ECF No. 61] is GRANTED as to the dismissal of Bluegrass's Counts Two (Injunctive Relief) and Three (Contempt Sanctions), and is DENIED as to the Trust's requests for a summary judgment in its favor on its Counterclaims One (Declaratory Judgment), Three (Trespass to Land), and Four (Slander of Title), and on its request for a summary judgment in its favor on Bluegrass's affirmative defense of mutual mistake (as moot).

3.  The pending deadlines and trial set for this matter for May 18, 2026, are hereby VACATED.

4.  A separate judgment in conformity herewith shall be entered.

24

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Douglas L Lutz*
**Bankruptcy Judge**
**Dated: Thursday, April 30, 2026**
**(dll)**

**ECF 94**

**4/30/26 Judgment**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**

| | |
|---|---|
| IN RE | |
| | **CASE NO. 23-70113** |
| **INMET MINING, LLC** | |
| | **CHAPTER 11** |
| **DEBTOR** | |
| | |
| **BLUEGRASS NATURAL RESOURCES, LLC** | **PLAINTIFF** |
| | |
| **V.** | **ADV. NO. 25-7001** |
| | |
| **BLACKJEWEL LIQUIDATION TRUST by and through DAVID J. BECKMAN, TRUSTEE,** *et al.* | **DEFENDANTS** |

| | |
|---|---|
| **BLACKJEWEL LIQUIDATION TRUST by and through DAVID J. BECKMAN, TRUSTEE,** | **COUNTERCLAIM-PLAINTIFF** |
| | |
| **V.** | |
| | |
| **BLUEGRASS NATURAL RESOURCES, LLC,** *et al.* | **COUNTERCLAIM-DEFENDANTS** |

**JUDGMENT**

In conformity with the Memorandum Opinion entered herein, IT IS ORDERED that:

1. The Bluegrass Motion [ECF No. 60] is GRANTED. Bluegrass shall be awarded a

   summary judgment as against the Trust (a) as to its Count One (Declaratory

   Judgment) on ownership of the Real Property, and (b) dismissing the Trust's

   Counterclaims One through Six.

2. The Trust's Motion [ECF No. 61] is GRANTED as to the dismissal of Bluegrass's

   Counts Two (Injunctive Relief) and Three (Contempt Sanctions), and is DENIED as

   to the Trust's requests for a summary judgment in its favor on its Counterclaims One

(Declaratory Judgment), Three (Trespass to Land), and Four (Slander of Title), and on its request for a summary judgment in its favor on Bluegrass's affirmative defense of mutual mistake (as moot).

3. The pending deadlines and trial set for this matter for May 18, 2026, are hereby VACATED.

2

The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.



Signed By:
*Douglas L Lutz*
**Bankruptcy Judge**
**Dated: Thursday, April 30, 2026**
**(dll)**